**SCHMOLDT v. BOLEN, State Treas., et al.**

No. 28536. June 21, 1938.

A. N. Murphey, for plaintiff.

Mac. Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants.

GIBSON, J. Issuance of state treasury notes, as permitted by article 3, chapter 27, Okla. Sess. Laws 1937, is here sought to be enjoined by this original proceeding brought by a taxpayer against the State Treasurer, the State Auditor, and the Governor, to whom the act has committed the responsibility of determining the amount of and approving the notes to be issued. The validity of the authorizing provisions of the act was questioned in the case of Davis v. Childers, 181 Okla. 468, 74 P.2d 930, but because the trial court did not pass upon the constitutional features presented, we did not consider them on the appeal. Some pertinent powers of the Legislature were discussed in that case, and principles were announced which are of concern here.

In section 1 of the act under consideration the Legislature announces an avowed intention to maintain by the provisions of the act a cash balance to meet current expenses, and to avoid issuance of nonpayable 6 per cent. warrants. By section 2 the Governor, Auditor, and Treasurer are given authority to issue negotiable notes in anticipation of receipt of revenues for the fiscal year, to pay any valid warrants. Section 3 provides that the notes shall not bear more than 5 per cent. interest and provides the procedure details for issuing the notes. Sections 4 and 5 provide for payment of the notes out of the fiscal year's revenues and limit the amount to the appropriations made.

The proposed notes under consideration here total $5,000,000, bear 2 per cent. interest and are payable in April, 1939. It is asserted that they violate the debt provisions of our Constitution, sections 23, 24, 25 of article 10; also section 3 of article 10, section 4 of article 10 section 55 of article 5, and have other infirmities which do not involve constitutional objections.

An original action in the Supreme Court of Pennsylvania was brought by a taxpayer under conditions very similar to those involved here and similar points were presented. The Supreme Court denied the application. We quote the following from that case:

"This is a taxpayer's bill to restrain certain officers of the commonwealth, and the Security Bank Note Company of Philadelphia, a corporation, from printing, executing, and issuing tax-anticipation notes pursuant to the Act of June 22, 1935, and paying out any money under it. Plaintiff contends that the act is repugnant to article 9, sections 4 and 5, of the Constitution. An answer was filed. The issue is one of law.

"The principal question is whether the notes, if issued, will constitute a 'debt' of the commonwealth within the meaning of that word as used in article 9, section 4, reading as follows: 'No debt shall be created by or on behalf of the state. except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the state in war, or to pay existing debt; and the debt created to supply deficiencies in revenue shall never exceed, in the aggregate at any one time, one million dollars: * * *'

"The power of the commonwealth to raise revenue by taxation and the power to borrow money are dealt with in article 9 of the Constitution. The fundamental principle originally applied was that, save for $1,-000,000, the state must pay as it goes, 'the debt created to supply deficiencies in revenue shall never exceed, in the aggregate at any one time, one million dollars.'

"This court has not hitherto been called upon to determine the meaning of the word 'debt' in section 4 in relation to the limitations obviously imposed by the scope of article 9 on some of the commonly accepted meanings of the word. A different debt maximum was provided for municipalities in article 9, section 8, still, however, adhering to the rule of 'pay as you go,' subject to the specifically allowed exceptions. The word 'debt,' as used in the limitation on municipalities, has frequently come before the court for consideration, and the meaning suggested in the first case coming up after the adoption of the Constitution has been followed since, and is the meaning attributed to the word by most, if not all, of the states in which the question has arisen. See Dillon, Municipal Corporations, c. VI, secs. 193-195; McQuillin, Municipal Corporations, secs. 2378, 2379, note 92 A. L. R. 1299 (1933). * * *

"We think, however, as appears to have been suggested in Keller v. Scranton, 200 Pa. 130, 135, 49 A. 781, 86 Am. St. Rep. 708, that the word 'debt' in section 4 is used in a still more limited and technical sense than in section 8 restricting action by municipalities; certainly if a municipal obligation payable out of current revenues is not a debt within section 8, tax anticipation notes payable from current revenues levied and assessed are not within the prohibition of section 4. * * *

"The creation of these notes for payment out of current revenue adds nothing to the state debt as defined. The proceeds, by the terms of the act, will enable the common-

wealth to make prompt payment of its obligations and thus avoid conducting the government on credit until the taxes are received. The act merely provides a method of obtaining ready money in exchange for obligations not yet collectible from taxables. It substitutes one creditor (the note holder) for another (the person to whom the commonwealth must pay). * * *

"During a biennium many debts in the ordinary (though not the constitutional) sense of the word must be incurred by the commonwealth; a debt, in one sense, results from every purchase on credit of articles needed from day to day in the ordinary course of public business. But no one would suggest that such debts are within the intendment of section 4; in these transactions both the state as purchaser, and the seller, as creditor, deal on the faith of the implication that the purchase is necessary for the conduct of the state government pursuant to appropriation made by the Legislature and that payment will be made in accordance with the appropriation; in other words, it is a transaction to be discharged out of current revenue.

"When legislation provides for the levy and collection of current revenues, assets are created, though the exact amount receivable may not be determinable in advance. The act of 1935 refers to statutes providing for present taxation. As these taxes, though due, are not collectible at the moment, but only after lapse of time, it may be that, in the near future, to conduct the affairs of the government, money not in hand will be necessary, and that, later in the fiscal period, more will be available than is then required. As we understand it the Legislature intended to provide for that contingency in the emergency referred to in the act. The solution of the problem involved immediate borrowing of money to be repaid out of current revenues when received, the money borrowed meanwhile being used for the purposes specified in the appropriation laws. In that light it cannot be said that the debt of the state is increased within the terms of article 9, sec. 4, any more than the same thing can be said of municipal borrowing against current revenue. There is a mere exchange of one obligation for another. The total debt of the state is not increased. If such borrowing by the state is held to be a debt within section 4, we shall be overruling the cases dealing with the word 'debt' in section 8 permitting municipalities to do what the state now proposes to do.

"It must be understood, of course, that the limitation in section 4 has the effect, and the statute recognizes it, of limiting the issue and the payment of the tax anticipation notes to moneys received from the revenues already provided for and to become payable in the biennium." Kelley v. Baldwin, Auditor General (Pa.) 179 Atl. 736.

In support of the statements that the creation of the notes for payment out of current revenue adds nothing to the state debt, the Pennsylvania court cites our own case of Graham v. Childers, 114 Okla. 38, 241 P. 178. In that case we said:

"The Legislature is convened by the Constitution biennially in January. While so convened, it makes appropriations for two fiscal years; the first beginning July 1st, following the constitutional convening date. The whole taxes for the first of such fiscal years do not, under the law, become due * * * until June following, and, no doubt, the bulk of such revenue does not actually reach the state treasury until months or years later. * * *

"The act of the Legislature appropriating money sets aside the amount specified for the purpose designated, out of the money in the treasury not otherwise appropriated, either there at the time or that may lawfully be brought there. Moreover, such appropriation is legislative direction to the auditor to draw his warrant for the purpose designated."

While it is true that in that case this court was discussing, among other things, the applicability of section 9 of article 10 of the Constitution as it then existed, limiting the rate of ad valorem taxes which could be levied for state purposes, it seems to us the Legislature is now more free than before, since it does not need to consider at all any restrictions upon its appropriation power save only that which, in its sound judgment, will be within the amount of revenues available under the various methods of raising taxes which it has been compelled to find to take the place of the ad valorem tax denied it. In that case it was further pointed out that the Legislature has the power at its succeeding session to supply any deficiency that may have arisen from its acts during the first session. And in Davis v. Childers, supra. we followed that interpretation, using this language in respect to the power of the Legislature to make up the deficiency. 181 Okla. p. 471, 74 P.2d 932:

"If it has erred, it may still, under section 3 (article 10), levy taxes for any deficiency that may accrue."

We there also reiterated the statement made in Graham v. Childers that section 3 of article 10 is made the safety valve to be operated by the Legislature when a fiscal year may show a deficit.

It will be noted that in Graham v. Childers, supra, it is stated that the appropriations by the Legislature are the directions for drawing warrants. These appropriations, which the Legislature is bound to fi-

nance during the biennium, therefore authorize the issuance of legal warrants, payable or nonpayable, according to the current state of the treasury. If nonpayable, the warrants are interest bearing, and of course the payment of interest thereon is another charge which the Legislature incidentally must finance. See In re State Funding Bonds of 1935, Series A, 173 Okla. 622, 50 P.2d 221.

The method provided by the Legislature here appears to be to the advantage of the state, so far as interest is concerned. The notes are for a less rate of interest than the warrants bear. It is provided by the act that the notes are payable from the revenues to accrue for the fiscal year in which the anticipation notes are issued. They are redeemable by issuing payable warrants. In other words, the Legislature has by this scheme attempted to provide a method by which the state's finances will be kept on as nearly a cash basis as possible. Warrants will not be discounted, but will be paid by the anticipation notes. As revenues accrue from taxes already levied or to be levied for the purpose during the biennium the notes will be retired. We fail to see how the issuance of notes at a less interest rate than warrants would bear can increase the indebtedness of the state or pledge its faith and credit beyond the point to which such faith and credit are already pledged to discharge the obligation of the warrants. If, as in the Funding Bond Case, bonds do not unlawfully create an indebtedness, when they take up legal warrants, it cannot be said that notes which take up the same sort of warrants will create a new or an increased debt.

Other cases holding to the view that such notes, issued in anticipation of revenues to accrue, are not considered as increasing old or creating new indebtedness are State ex rel. Black v. Eagleson (Idaho) 181 P. 934, and State v. State Board of Examiners (Mont.) 197 P. 988. See cases therein cited.

We find no attempt here to pledge any revenues beyond those which can be provided for during the biennium. In fact, there can be no revenues pledged beyond those which the Legislature has already been given the power to pledge or provide for the warrants. We have assumed heretofore, and must still assume, that the Legislature, if it has erred in judgment as to the amount of revenue provided, will within the biennium provide proper revenue for retiring the notes.

In the cases referred to it is said that the states generally hold that the term "debt," within the debt limitations, does not refer to those obligations incurred for current appropriations within the biennium for which presumably revenues have been or, under lawful power, will be provided for. In this respect there is no conflict here with the rules in the case of Boswell v. State, 181 Okla. 435, 74 P.2d 940. In the Boswell Case, too, it will be noted that we recognize the fact that changing the form of an existing obligation does not create or increase the debt of the state. It is the validity of the primary obligation that determines the right, or the invalidity thereof that determines the wrong. We find no wrong in providing a means of taking up properly issued warrants by use of notes of less burden, payable out of the same revenues from which the warrants ultimately would be payable.

The notes proposed to be issued mature within the time provided by section 55, article 5, of the Constitution. We presume that in issuing the notes the officers charged with that duty have determined the date at which it is expected revenues will be available to pay, and we know of no reason why they should not have the right so to exercise their judgment.

The notes are not bonds, and are not subject to the provisions of statutes relating to bonds. Their issuance is dependent entirely upon the Constitution and the statute which authorizes them. That statute furnishes its own public policy.

We do not understand the act to prohibit the fixing of a maturity date, and there seems to be no reason why any date within the biennium cannot be fixed as maturity date for the first issue, and such date for maturity of renewal notes as may appear from time to time to afford opportunity for the collection of taxes provided for payment. We do not read the act to authorize the issuance of notes before any warrants are issued. It seems to us the act contemplates payment by warrant as long as it appears that warrants are payable, and in fact the statute does not require the issuance of notes. It merely authorizes their issuance when revenues come in slowly. The income tax, for example, constitutes a large source of revenue, and payments from it are largest in the spring; hence until such payments come into the state treasury many warrants would be nonpayable. The officers charged with the authority to approve and issue the notes must have some discretion in fixing dates and denomination. Definite due dates, with right of renewal, no doubt were deemed advisable to make the sale easier. We do not anticipate that the interest accruing on the notes will exceed the interest due or to be-

come due on the warrants they replace. In the case before us it is certain to be less. ·Hence we cannot say that the method of issuance and payment of interest creates a debt by creating an obligation beyond that which would be created by the warrants, simply because notes are payable at a definite date while warrants are not. The statute expressly limits the principal of the notes to the amount of the appropriations, and contemplates that the principal of both the warrant and the note obligations shall not in the aggregate exceed the appropriations. See section 5.

We do not see how the failure of the statute to designate priority of payment can affect the validity of the issue. The Legislature contemplated the payment of all the notes at maturity, either by payable warrant or from the proceeds of new notes. The question of the order in which payment is to be made, in our judgment, is not now properly before us.

For the reasons stated, the application for injunction is denied.

BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, and HURST, JJ., concur. OSBORN, C. J., and DAVISON, J., absent.