

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL.
ATTORNEY GENERAL.

November 30, 1951

Hon. Larry O. Cox
Executive Director
Board for Texas State Hospitals
  and Special Schools
Austin, Texas      Opinion No. V-1363

Re: Legality of commencing a
construction project in this
fiscal year to be paid partly
from funds appropriated for
the first year and partly
from funds appropriated for
the second year of the bien-
nium.

Dear Mr. Cox:

Your request for an opinion is, in part, as
follows:

"We desire the opinion of your office re-
garding the legality of commencing a construc-
tion project in one fiscal year to be paid par-
tially out of that year's appropriated funds and
partially out of the succeeding fiscal year's appro-
priated funds, both years being in the same bi-
ennium.

"Section 26 of H.B. No. 426, 52nd Legisla-
ture, Regular Session, made an appropriation of
$5,000,000.00 for each fiscal year of the bien-
nium ending August 31, 1953, to the State Hos-
pitals and Special Schools Building Fund. On
the basis of Section 26, the Board for Texas
State Hospitals and Special Schools set up an
allocation for the first fiscal year of $1,500,000.00
for repairs and an allocation of $3,500,000.00
for new construction. The Board has under con-
tract or in the process of being contracted
$1,138,500.00 for repairs and $3,200,000.00 for
new construction, leaving a balance of $300,000.00
in the new construction allocation.

"The balance of $300,000.00 for new con-
struction is not sufficient to allow the Board
to contract for a new project.

320

"If it is legally possible, the Board
would like to enter into a contract, during
this fiscal year, for a project in excess of
$300,000.00. The Board will make the same
allocation during the second fiscal year of
the biennium, that is, $1,500,000.00 to re-
pairs and $3,500,000.00 to new construction.

"We do not think there is any question
that we can legally encumber the balance of
$300,000.00 during this fiscal year, even
though the project will not be completed and
paid for until the succeeding fiscal year.
Nor do we think there is any question that
we can legally contract and encumber at this
time the funds that will be available to us
in the second fiscal year of the biennium,
so long as no payment is made until the be-
ginning of the second fiscal year. Therefore,
it logically follows that the Board may enter
into a new construction contract in excess of
the balance of $300,000.00 so long as we do
not attempt to pay out more than $300,000.00
during this fiscal year and the balance after
this fiscal year.

"It is the interpretation of the State
Comptroller that should an appropriation for
any particular building be insufficient in
any one fiscal year, then the building can-
not be built.

"Should we grant that the State Comptroller
is correct in his interpretation of the law, we
believe that such interpretation would not ap-
ply in our case due to the fact that our appro-
priation of $5,000,000.00 each fiscal year is
not for any particular building but, as set out
in Subsection B of Section 26 of the aforesaid
appropriation bill, '. . . for the purpose of
architectural and engineering plans, construct-
ing, repairing, and equipping such buildings as
in the opinion of the Board are necessary to the
proper care of those committed or to be commit-
ted to such hospitals and special schools accord-
ing to law. . .'."

We have been unable to find any constitutional
prohibition which would preclude the Board for Texas
State Hospitals and Special Schools from entering into

a construction contract in one fiscal year with partial funds of that year's appropriation and partial funds from the succeeding fiscal year's appropriation if both years are in the same biennium. This method of expenditure would not be violative of Section 49, Article III, Constitution of Texas, prohibiting the creation of a debt by or on behalf of the State, since the obligation incurred by the contract would be payable out of appropriations, within the biennium, for which revenues have been provided. Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924); Schmoldt v. Bolan, 80 P.2d 609 (Okla. Sup. 1938). And since the contract would not call for an expenditure of money beyond the amounts appropriated for the current biennium, it would not violate Article VIII, Section 6.

You have correctly stated that the balance of $300,000 in this year's appropriation may legally be encumbered during this fiscal year, even though the project for which it is spent will not be completed and paid for until the succeeding fiscal year. In Att'y Gen. Op. O-2631 (1940), it was held that capital assets may be purchased out of a current appropriation, although the article purchased will not be delivered and paid for until after the close of the fiscal year.

We also agree with your statement that you may legally encumber at this time the funds which will be available to you in the second fiscal year of the biennium, so long as no payment is made until the beginning of the second fiscal year. An opinion appearing in Reports and Opinions of the Att'y Gen., 1914-1916, p. 695, held that a contract for the erection of a building at one of the State colleges could be made prior to the date on which the appropriation became available. The opinion stated:

"The fact that this $125,000.00 appropriated for the erection of a dormitory and dining room is not available until the 1st. day of September, 1916, does not postpone the taking effect of this Act of the Legislature until that date. This Act is as much the law now as it will be subsequent to September 1, 1916, and the Board of Regents would be warranted in letting the contract for the erection of said building at the present time or at any time after the enactment of such law and prior to August 31, 1917, the expiration of the fiscal period for which appropriation is made.

"Of course, as this $125,000.00 is by express provision of the Act not available until September 1, 1916, no warrants could be drawn or payments

made out of same until that date."

See Att'y Gen. Ops. O-2239 (1940), O-6011 (1944), and V-1139 (1950) for similar holdings.

Inasmuch as your Board may now contract for expenditure of the $300,000 balance in the current appropriation, even though payment is not to be made until the succeeding fiscal year, and inasmuch as it may also contract for construction to be paid for out of the appropriation for the succeeding fiscal year, we must determine if there is any reason why portions of these two appropriations may not be expended on the same project. The question becomes one of legislative intent--whether the Legislature intended that the cost of each construction project must be paid completely out of a single year's appropriation or whether it intended only that $5,000,000 each year should be available for use by the Board on whatever projects it undertook.

The State Hospitals and Special Schools Building Fund was created by House Bill 2, Acts 51st Leg., 1st C.S. 1950, ch. 1, p. 1 (Art. 7047c-1, V.C.S.), which increased the tax on cigarettes and allocated to this fund a percentage of the net revenues from the tax, not to exceed $5,000,000 for each fiscal year, through August 31, 1957. House Bill 2 provided that the moneys appropriated to the Board from the Building Fund were to be used "for the purpose of constructing, repairing and equipping such buildings as in the opinion of the Board are necessary to the proper care of those committed or to be committed to such hospitals and special schools according to law."

The current appropriation bill, House Bill 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, likewise permits the Board to use these funds for the construction of such buildings as in the opinion of the Board are necessary. Section 26(b), Article II of House Bill 426 reads:

"All funds credited to the State Hospitals and Special Schools Building Fund under this Article are hereby appropriated to the Board for Texas State Hospitals and Special Schools for the purpose of architectural and engineering plans, constructing, repairing, and equipping such buildings as in the opinion of the Board are necessary to the proper care of those committed or to be committed to such hospitals and special schools according to law. Provided, however, the fees paid to an architect shall not exceed six per cent (6%) for the plans, specifications and supervision of construction of said

> buildings and all construction contracts made
> for, and the final acceptance in connection
> with such construction, other than the plans
> and specifications, shall be subject to the
> review and approval of the Board of Control.
> The Board may contract for, and pay for plans
> and specifications for any contemplated con-
> struction, even though the contract for such
> plans and specifications may be made in one
> (1) year and the contract for construction is
> entered into the following year."

The Legislature has not designated that the ap-
propriated funds be used for the construction of specific
buildings, nor has it limited the Board in the manner in
which the funds are to be applied to the construction of
such buildings as it deems necessary. The provision express-
ly permitting the Board to pay for plans and specifications
for a contemplated construction out of a different appro-
priation than the one from which construction costs are paid
shows that the Legislature did not require each project to
be financed completely out of the appropriation for a single
fiscal year. On the contrary, we think the entire legis-
lative history of the State Hospitals and Special Schools
Building Fund shows that the Board is authorized to apply
the full amount of each appropriation to an over-all program
for the improvement of the facilities of the institutions
under its jurisdiction and that each project need not be
financed in whole out of a single year's appropriation. To
hold that the $300,000 remaining in the current appropria-
tion cannot be spent in the building program contemplated
for the second year of the biennium would thwart the will
and intention of the Legislature, that intention being clear-
ly to authorize the expenditure of $10,000,000 for such pur-
poses within the biennium.

The question you have presented is to be distin-
guished from that considered in Attorney General's Opinion
O-7352 (1946). In that instance, the Legislature appro-
priated to Stephen F. Austin State Teachers' College, for
the year ending August 31, 1946, the sum of $24,000 "for
steam tunnels and steam pipes for main buildings." There,
the appropriation was for a specific improvement, and pro-
vided for the expenditure of a specific amount in the con-
struction of that improvement. There, the intention of the
Legislature was clearly to the effect that the $24,000 was
all that should be spent for the improvement specifically
designated. In the question before us herein, the types of
buildings and the number of such constructions are not

specifically designated in the appropriation. The reasoning of Opinion O-7352, which denied to the college the power to contract for anything less than a completed steam system to be paid for entirely out of the $24,000 appropriation, is not applicable to the present situation.

In view of the foregoing discussion, it is our opinion that under the present facts the Board for State Hospitals and Special Schools may enter into a contract for a construction project to be paid for partially out of the appropriation for the current fiscal year and partially out of the appropriation for the succeeding fiscal year, both years being in the same biennium.

SUMMARY

Under the provisions of its present appropriations for building construction and repairs, the Board for Texas State Hospitals and Special Schools may enter into a contract for a construction project to be paid for partially out of the appropriation for the current fiscal year and partially out of the appropriation for the succeeding fiscal year, both years being in the same biennium.

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

BW:mh

Yours very truly,

PRICE DANIEL
Attorney General

By Burnell Waldrep
Assistant