The Honorable Gus Wingfield Auditor of State 230 State Capitol Little Rock, Arkansas 72201
Dear Mr. Wingfield:
I am writing in response to your request for an opinion concerning your duties in drawing warrants on the State Treasury and in keeping an account between the State and the Treasurer of State. Specifically, you note that your office has "received notice from the State Treasurer that there are a number of treasury fund accounts that do not have sufficient balances to redeem state warrants" and that the "State Treasurer will be unable to forward redeemed state warrants to [the Auditor's] office until such time as the balances are restored to these fund accounts." You pose the following question in this regard:
 Since the fund accounts in question have negative amounts and the Treasurer of State does not have sufficient balances to redeem state warrants is the Auditor of State in violation of state law to continue to draw state warrants on the fund accounts that have negative balances?
RESPONSE
It is my opinion that the answer to your question is "no." A newly adopted law repealed the specific responsibility of the Auditor to determine that a sufficient balance remains in the particular fund against which a warrant is drawn. As regards the Auditor's responsibilities, therefore, I can find no provision of law preventing the drawing of warrants in this circumstance. Current law, however, places responsibility on the Department of Finance and Administration and upon each state agency head to determine that a sufficient appropriation is in place to support the requested warrant and that its issuance will not result in deficient spending. According to my understanding, these requirements are generally being met. The circumstances giving rise to your question, therefore, in all likelihood reflect an administrative and accounting problem, rather than a legal one.[1]
Although you do not indicate so in your opinion request, the problem you describe appears to have occurred due to implementation of the new "Arkansas Administrative Statewide Information System" or "AASIS."[2]
The system is a "new statewide accounting system of the Department of Finance and Administration — Management Services Division." Seegenerally, Act 973 of 1999 (initially appropriating $25,000,000 for the system). The system became effective at or around the beginning of this fiscal year (July 1, 2001). It is my understanding that some transitional problems and discrepancies in accounting systems between AASIS and the accounting systems of the Auditor and Treasurer of State contributed to the problem you describe. See n. 2, supra. Although the discrepancies have apparently caused some of the relevant funds to reflect temporary negative balances, there is reportedly no shortage of projected revenues to meet the various expenditures being charged against the funds. Seeagain, n. 2, supra. The problem is described in a memorandum to my office from John Theis, the Assistant Commissioner of Revenue, Policy and Legal, as involving "treasury fund accounts that have sufficient balances to redeem state warrants while sub-fund accounts within each of those fund accounts may have insufficient balances to redeem the warrants." I will assume the facts above for purposes of addressing your question. I cannot, in the limited format of an official Attorney General opinion, however, develop a sufficient factual basis to detail the nature, extent or cause of these problems with regard to particular accounts. Only a finder of fact could undertake that task. I can only focus on the narrow legal question at hand, which involves the Auditor of State's compliance with, or violation of, applicable legal requirements in drawing warrants on the State Treasury in light of the circumstances detailed above.
The duties of the Auditor of State are set out, at least in part, at A.C.A. § 25-16-501 to -519. These duties include the duty "[t]o draw all warrants upon the State Treasury for money, except in cases otherwise expressly provided by law." A.C.A. § 25-16-505(2) (Supp. 2001). Other provisions of the subchapter detail the form the warrants must take (A.C.A. § 25-16-516) and state that: "[n]o warrant shall be drawn by the Auditor of State unless the money has been previously appropriated by law, nor shall the amount drawn for under any one (1) head ever exceed the amount appropriated by law for that purpose." A.C.A. § 25-16-517(a). Subsection (c) of this latter statute provides that "[i]f the Auditor of State shall knowingly issue any warrant upon the State Treasury not authorized by law, he shall be deemed guilty of a misdemeanor in office. Upon conviction thereof, he shall forfeit, for the use of the state, any sum not less than fifty dollars ($50.00)."
The Auditor of State, therefore, may not draw a valid warrant where no money has been appropriated by law for the expense. A.C.A. §25-16-517(a). See also Oliver v. Bolinger, 146 Ark. 242, 225 S.W. 314
(1920); Rumbough v. Berry, 28 Ark. 348 (1873); Arkansas Constitution, art. 5, § 29 and art. 16, § 12. While A.C.A. § 25-16-517 discusses the need for a sufficient appropriation prior to drawing the warrant, an "appropriation" is not the equivalent of a cash balance in a particular fund. An appropriation is, rather, an authorization to a public official to draw or use a sum set apart for a specified purpose. See e.g.,Dickinson v. Clibourn, 125 Ark. 101, 187 S.W. 909 (1916). The statutes recited above with regard to the duties of the Auditor do not speak to the necessity of a sufficient balance in a particular fund prior to drawing the warrant.
A former statute, A.C.A. § 19-4-1105, previously contained such a requirement (a sufficient balance determination prior to the drawing of a warrant), but it was amended away by a newly adopted act of the General Assembly. Act 1453 of 2001 amended a great many fiscal laws of the state, most encompassed within the "General Accounting and Budgetary Procedures Law." See A.C.A. §§ 19-4-101 to -2202. This new act appears to have been adopted to lay a foundation for the implementation of AASIS. Act 1453 changed some of the duties of the Auditor of State with regard to the issuance of state warrants. Notably, Section 4 of Act 1453 repealed a former requirement contained in A.C.A. § 25-16-505(3) that the Auditor "express in the body of every warrant . . . the particular fund appropriated by law out of which the warrant is to be paid. . . ." The Auditor is no longer required by this statute to specify the particular fund out of which a warrant is to be paid.[3] Prior law also contained a provision subjecting vouchers submitted to the Auditor for payment to an examination by the Auditor to determine that: "[a]n appropriation has been made to cover such proposed expenditure and that there is a sufficient balance remaining in the appropriation account and in the fundagainst which it is drawn to take care of such voucher when it is converted into a warrant." See former A.C.A. § 19-4-1105(b)(3) (emphasis added). Section 31 of Act 1453 repealed this requirement and substantially revised the statute containing it. That statute now provides in toto only that:
 Before any voucher for the disbursement of funds in the State Treasury is presented to the Auditor of State for the issuance of his or her warrant thereon, it shall be recorded in the state's financial management system in accordance with procedures established by the Chief Fiscal Officer of the State. The Auditor of State shall have authority to perform an examination, under the procedures established in this section, as he or she deems advisable before issuing his or her warrant in the payment of the voucher.
See current A.C.A. § 19-4-1105 (Supp. 2001). Another statute echoes this requirement:
 The Auditor of State shall issue his or her warrants in payment of the vouchers presented to him or her by the Chief Fiscal Officer of the State only after he or she shall have satisfied himself or herself that the provisions of this chapter have been complied with. For this purpose, the Auditor of State shall have the authority to conduct any further examination and pre-audit of the vouchers which he or she may deem necessary. A single warrant may contain payments from multiple appropriations, classifications of appropriation, and funds.
A.C.A. § 19-4-403, as amended by Act 1453, § 5. This latter statute merely begs the question of what is required for compliance with this statutory chapter.
I cannot conclude, therefore, in light of the recent revisions made to the applicable statutes, that the Auditor of State would be violating any state law in drawing a warrant where there may be a temporary negative balance in the applicable fund for the reasons prompting your opinion request. Your specific duty to determine that a sufficient balance remains in the fund against which a warrant is drawn has been repealed.[4]
This is not to say, however, that state law does not contain provisions to ensure against deficit spending or the creation of indebtedness on the part of the State. With limited exceptions, the Arkansas Constitution prohibits the issuance of "evidences of indebtedness" pledging the revenues of the state without a vote of the people. See Arkansas Constitution, Amendment 20.[5] The State is also prohibited from issuing any interest-bearing treasury warrants or scrip. Arkansas Constitution, art. 16, § 1. In addition, a number of state statutes address the responsibilities of the Department of Finance and Administration and the various state agency heads to monitor and guard against deficit spending. Section 19-1-212 of the Arkansas Code, as amended by Act 1453 of 2001 provides that:
 It shall be the duty and responsibility of the Director of the Department of Finance and Administration to:
 (1) Keep advised at all times as to the revenues and other income available for the operation, maintenance, and improvement of all state agencies;
 (2) Exercise the power conferred upon him or her by law to see that the state and all state agencies are maintained on a basis of accounting recommended by the Governmental Accounting Standards Board of governmental purposes.[6]
 (3) See that no obligation shall be incurred which shall not be payable when the obligation shall become due, and
 (4) Exercise his or her powers to see that the funds on hand and estimated to become available to each state agency shall be sufficient to maintain the state and all of its agencies on a sound financial basis without incurring a deficit.
See also A.C.A. § 19-4-1107(6)(A)(ii), as amended by § 32 of Act 1453 of 2001 (authorizing the Chief Fiscal Officer to review all disbursements to determine that they are issued in accordance with their respective appropriations and that there are sufficient funds to cover all the payments); and A.C.A. § 19-4-1306, as amended by Act 1453, § 40 (detailing the oversight of state agency spending by DFA to prevent deficit spending); A.C.A. § 19-4-1210(b)(2), as amended by § 39 of Act 1453 of 2001 (requiring the Chief Fiscal Officer to exercise the power of his office to enforce the fiscal laws to prohibit deficit spending); and A.C.A. § 19-4-702(a) and (b), as amended by Act 1453 of 2001, § 15 (authorizing state agencies to carry over obligations of one fiscal year and charge them against the next fiscal year's revenues under certain circumstances, and requiring the Auditor of State to issue his warrants in payment thereof, as opposed to former Claims Commission procedure. Seeformer A.C.A. § 19-4-702(c) (Repl. 1998)).
State agency heads are also charged with responsibilities in this regard. Newly added subsection (c)(2) of A.C.A. § 19-4-1103 (Supp. 2001) provides that "[i]t shall also be the responsibility of the agency head to establish that: . . . (2) An appropriation has been made to cover the proposed disbursement and that there is sufficient balance remaining in the appropriation account and in the fund against which it is drawn to ensure that the voucher can be converted into a valid warrant." See also
A.C.A. § 19-4-705 ("[n]o state agency . . . shall incur any obligations under the appropriations unless there are funds on hand or an approved federal grant, or estimated to become available, during the fiscal year for the payment of the obligation); A.C.A. § 19-4-1207, as amended by § 37 of Act 1453 of 2001 (making it the duty of state agency heads to be cognizant of resources available and to see that no obligations shall be incurred which cannot lawfully be discharged when they become due and payable); and A.C.A. § 19-4-1210, as amended by § 39 of Act 1453 of 2001 (holding the bonded disbursing officer for each agency responsible for incurring obligations and prohibiting the disbursing officer from incurring any obligations in excess of the funds made available).[7]
I do not have any information suggesting that the requirements of these sections are being violated. Obviously, however, negative fund balances occasioned by accounting discrepancies may make it more difficult for the affected officials to carry out their responsibilities. Prudence dictates a resolution of the discrepancies at the earliest possible date.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] According to my information, the state has entered into a consultant contract with an accounting firm to reconcile the accounting problem. See "3 new contracts add $1 million to computer tab," Arkansas Democrat-Gazette, (Sept. 22, 2001, page 1B).
[2] See "System shows state accounts in red," Arkansas Democrat-Gazette, (Sept. 20, 2001, page 2B).
[3] It should be noted, however, that the warrant form set out at A.C.A. § 25-16-516 contains a blank space after the words "out of," which presumably is a reference to the nature of funds against which the warrant is to be drawn. Additionally, § 5 of Act 1453 of 2001 added a sentence to A.C.A. § 19-4-403 stating that: "[a] single warrant may contain payments from multiple appropriations, classifications of appropriation, and funds."
[4] On the other hand, the Auditor of State is authorized to perform an examination as he deems advisable prior to issuance of a warrant. A.C.A. § 19-4-1105 (Supp. 2001). See also A.C.A. § 19-4-403 (Supp. 2001). Although I have expressed my opinion that you would not necessarily be violating state law in issuing a warrant under these facts, you may nonetheless be invested with some discretion as to whether to do so. The amount of discretion with which you are invested may depend upon the facts surrounding a particular warrant and any particular law pertinent thereto. Cf. Democrat Printing Lithographing Co. v. Parker, Auditor,192 Ark. 989, 96 S.W.2d 16 (1936) (State Auditor invested with discretion under prior law in issuance of state warrants such that the remedy of mandamus would not lie to control his actions, but distinguishing Cothamv. Coffman, 111 Ark. 108, 163 S.W. 1183 (1914) in which Supreme Court held that mandamus would lie to require Auditor to draw warrant for an officer's salary under other statute).
[5] I have not found any legal precedent suggesting that a state warrant drawn on an account with an insufficient balance would constitute an evidence of indebtedness pledging the revenues of the state for purposes of Amendment 20. I have found several cases holding that the issuance of such a warrant does not create a "debt" under analogous constitutional provisions. See, e.g., State ex rel. Troy v. Yelle,36 Wash.2d 192, 217 P.2d 337 (1950); Schmoldt v. Bolen, 183 Okla. 191,80 P.2d 609 (1938); In re Application of State to Issue Bonds to FundIndebtedness, 40 Okla. 145, 136 P. 1104 (1913); In re Application ofState to Issue Bonds to Fund Indebtedness, 33 Okla. 797, 127 P. 1065
(1912); State ex rel. Tipton v. Erickson, 93 Mont. 466, 19 P.2d 227
(1933); State ex rel. Toomey v. State Board of Examiners, 74 Mont. 1,238 P. 316 (1925); Riley v. Johnson, 219 Cal. 513, 27 P.2d 760 (1933); StateBudget Commission v. Lebus, 244 Ky. 700, 51 S.W.2d 965 (1932); Rhea v.Newman, 153 Ky. 604, 156 S.W. 154 (1913); and State ex rel. Black v.Eagleson, 32 Idaho 276, 181 P.2d 934 (1919). See also generally, HarrimanNational Bank v. Pope County, 173 Ark. 243, 292 S.W.2d 379 (1927) (county warrant was "evidence of indebtedness," but transferee takes it subject to constitutional defenses). In my opinion, moreover, where a temporary negative balance is occasioned by an accounting discrepancy rather than an actual shortage of funding, the invocation of Amendment 20 as a prohibition would fail.
[6] The 2001 amendment by Section 2 of Act 1453 deleted a former reference to state agencies being maintained on a "cash basis" and substituted the language appearing in subsection (2) above.
[7] One additional statute, A.C.A. § 25-16-607 (Repl. 1996), which details the duties of the Treasurer of State, indicates that "[w]henever there shall not be in the State Treasury a sufficient amount of money to pay all the warrants of the Auditor of State outstanding at the time, the Treasurer of State shall redeem the warrants in the order of their dates and numbers as issued. It shall be lawful for the Treasurer of State to pay any Auditor of State's warrant when the amount of money in the State Treasury is sufficient to redeem the warrant, as well as all other warrants of earlier date and number preceding it." This statute apparently dates back to the Revised Statutes of 1838, and was last amended in 1885. It speaks to the State Treasury as a whole and does not appear to take account of the allocation of state warrants to distinct funds. It is difficult, therefore, to apply this antiquated statute to the current practice, which involves such distinct funds. In my opinion the statute is not violated as long as "the amount of money in the StateTreasury is sufficient to redeem the warrant, as well as all other warrants of earlier date. . . ." Id. (Emphasis added.)