STATE EX REL. STATE SAVINGS BANK, RELATOR, *v.* BARRET, STATE TREASURER, RESPONDENT.

(No. 1,644.)

(Submitted February 15, 1901. Decided March 4, 1901.)

*Mandamus—Supreme Court — Original Jurisdiction—State Warrants — Assignment — Negotiability — Acceptance at Par—Interest — Constitutional Law—Contracts—Impairment of Obligation.*

1. Where the state treasurer refused to pay interest on certain warrants drawn on the school of mines building fund, directed by statute to be paid therefrom, the mere fact that it was a state officer refusing to perform a ministerial duty was not a sufficient reason for invoking the original jurisdiction of the Supreme Court by an application for *mandamus.*

2. In the future, applications to the Supreme Court for writs of mandate must "set forth * * * the reasons which render it necessary that the writ should issue originally from this Court" (Rule II, Subdivision 2).

3. Where contractors were paid for state work by warrants drawn on a certain fund in the state treasury, and were entitled to interest thereon after presentation, the assignees of such contractors succeeded to all their rights, notwithstanding the warrants were non-negotiable, and were entitled to interest on the warrants.

4. Where contractors working for the state agreed to accept warrants on a certain fund at par, and in full payment for the work, such acceptance did not preclude their statutory right to interest on the warrants, but merely bound them to accept such warrants at their face value.

5. Under Constitution, Art. III, Sec. 11, the legislature can no more impair the obligation of a contract entered into by the state than it can the obligation of a contract made between individuals.

6. A statute which changes the terms of an agreement by imposing new conditions, or dispensing with those expressed or implied, is repugnant to the Constitution as being a law impairing the obligation of a contract; and the degree of impairment is immaterial.

7. Where a contract was made with reference to Political Code, Sec. 1601, which provided that, if certain state warrants to be issued in payment of work on the state school of mines building could not be paid on presentation for lack of money in the state school of mines building fund, out of which they were to be paid, they should bear interest at the rate of 7 per cent. per annum from the date of presentation, Laws of 1897, p. 124, repealing Political Code, Sec. 1601, was void as to such contract, being in conflict with Constitution of the United States, Art. I, Sec. 10, forbidding the impairment of the obligation of contracts by state legislation, and Constitution of Montana, Art. III, Sec. 2, to the same effect; hence the holder was entitled to interest on such warrants.

*Mandamus* by the State, on relation of the State Savings Bank, to compel the state treasurer to pay certain state warrants. Writ granted.

*Messrs. McBride & McBride,* for Relator.

*Mr. James Donovan, Attorney General,* for Respondent.

MR. JUSTICE PIGOTT delivered the opinion of the Court.

This is a proceeding in *mandamus* instituted by the State Savings Bank for the purpose of compelling the state treasurer to pay certain warrants addressed to him and drawn on the School of Mines Building Fund. An alternative writ was issued. To the petition the treasurer demurs for want of substance.

Eliminating its formal averments and condensing its statements the petition exhibits the following facts: By Section

17 of the so-called "Enabling Act," approved February 22, 1889, Congress granted to the state of Montana for the establishment and maintenance of a school of mines, 100,000 acres of land (25 Statutes at Large, 676; 1 Supp. Rev. St. U. S. pp. 645, 648). Thereafter, by Section 1 of "An Act to provide for the location, incorporation, establishment, maintenance, management and support of the Montana School of Mines," approved February 17, 1893, the Montana State School of Mines was established as a corporation. (Laws of 1893, p. 177; Section 1572 of the Political Code.) For the purpose of erecting, furnishing and equipping buildings for this corporation, the Legislative Assembly by an Act approved March 7, 1895, created the State School of Mines Commission, authorizing it to prepare plans and specifications for the erection of buildings, to advertise for bids for the construction thereof, and to let the contract to the lowest responsible bidder. (Sections 1591, 1594, 1595 of the Political Code.) The Act further created a state fund to be known as the "State School of Mines Building Fund," to the credit of which should go all moneys derived from the sale or rental of the lands granted by Congress to the state for the purpose of constructing buildings for the State School of Mines, and the moneys so received, as soon as realized from time to time, should forthwith be put into the state treasury and placed to the credit of the fund named. (Section 1600 of the Political Code.) That portion of the Act of March 7, 1895, which appears in the Political Code as Section 1601 is as follows: "Upon the completion of said building or buildings and at any time previous thereto as per the contract entered into by the board of school of mines commissioners they shall certify such amount or amounts to the state board of examiners, who shall forthwith cause to be drawn a warrant or warrants on the said state school of mines building fund to the order of the person or persons described by the board as entitled thereto, for the full amount of their respective claims, which said warrant or warrants shall be taken and accepted as in full payment of the said indebtedness, and no

appropriation for the payment of the said warrant or warrants shall ever be made or payment thereof ever be made by or from any other source than the said State School of Mines Building Fund, and if, on the presentation of said warrant or warrants to the state treasurer, there shall not be in said fund sufficient moneys to pay the same, the same shall be registered, as of date of presentation, and shall henceforth until paid bear interest at the rate of seven per cent. per annum." Another section of the Act of March 7th appears as Section 1597 of the Political Code: "All claims for the erection of said building or buildings shall be first approved by the school of mines commissioners and audited and allowed by the state board of examiners, and paid in the same mode and manner as claims against the state are paid: Provided, however, that such claims shall be paid out of the respective funds designated in this act, against which they may be chargeable."

On July 28, 1896, the commissioners entered into a contract with Riddle & Roach for the erection and construction at Butte of a building for the State School of Mines. Among other provisions, the contract contained the following: "It is hereby mutually agreed between the parties hereto, that the sum to be paid to the contractors for the said work and material, and for the entire erection and completion of the said building, as above provided, shall be eighty-eight thousand four hundred fifty-six and eighty-five one hundredths ($88,456.85) dollars, subject to additions and deductions on account of alterations, as hereinbefore specified, and that said sum shall be paid in warrants on the State School of Mines Building Fund, which shall be drawn as provided in Section 1601 of the Political Code of Montana, upon certificates of the Board to the State Board of Examiners, and which warrants the contractors agree to accept at par in full payment and satisfaction of this contract." Pursuant to the contract, and in accordance with its terms, Riddle & Roach completed the building, which was approved and accepted by the commissioners and is now used and occupied by

the School of Mines. At the time the contract was made, and at the time Riddle & Roach entered upon its performance, all of the sections mentioned were in force. ' After Riddle & Roach had in large measure performed the contract, by an Act entitled "An Act authorizing the issuance of bonds to provide for the payment of outstanding warrants and for the erection and completion of a building for the School of Mines at the city of Butte and providing for the payment of interest thereon, and repealing of Sections 1584, 1600 and 1601 of the Political Code of Montana," approved March 8, 1897, provision was made for a fund for payment of the cost of erection of the School of Mines building then in process of construction by Riddle & Roach. (Laws of 1897, p. 124.) This Act abolished the School of Mines Building Fund, and in its stead created the School of Mines Building, Interest, and Sinking Fund, and, in effect, required that all moneys which had theretofore been payable into the first-named fund should be paid into the latter-named fund, and that warrants drawn by the State School of Mines Commission should be paid out of the new fund. The Act purported to repeal Sections 1584, 1600 and 1601. In part payment of the erection of the building the commissioners, in conformity with the contract and under the authority of Section 1601, from time to time caused to be delivered to Riddle & Roach the warrants which are the basis of the present proceeding. When the warrants were delivered there was no money in the fund upon which they had been drawn, and the state treasurer thereupon registered them in accordance with the provisions of Section 1601. The warrants were all registered between May 23, 1897, and September 6, 1899. The warrants were then assigned to the plaintiff (relator), which has presented them for payment. Although at the time of presentation there was and still is sufficient money in the School of Mines Building, Interest, and Sinking Fund to pay all the warrants, both principal and interest, the treasurer refused, and continues to refuse, to pay any interest thereon, and demands the surrender of the

warrants upon the payment of the principal amounts only. The ultimate question presented for decision is, whether the warrants registered since the Act of March 8, 1897, became operative bear interest from the date when they were registered.

1.    The mere fact that a state officer refuses to perform a ministerial duty specially imposed upon him furnishes no reason why this Court, in the exercise of its original jurisdiction, should grant a writ of mandate.    District courts are ordinarily the primary forums, and in them should be commenced special proceedings unless sufficient reasons exist why resort to the Supreme Court is necessary in the first instance.    The sole ground upon which the plaintiff has invoked the original jurisdiction of this Court is that the defendant is the state treasurer. The proceeding should have been commenced in the district court.    In view, however, of the loose practice which in this respect has occasionally been indulged, we permitted the alternative writ to be issued and shall retain jurisdiction of the case; but in the future applications for writs of mandate must, in the language of Subdivision 2 of Rule II of this Court "set forth * * * the reasons which render it necessary that the writ should issue originally from this Court;" and that the duty, the performance of which is sought to be enforced rests upon a state officer, board, or tribunal, will not be deemed a sufficient reason for invoking the original jurisdiction of the Supreme Court.

2.    The first objection urged by the attorney general in behalf of the state treasurer is that "there is no privity of interest existing between the owners of the warrants and the original contract between the state and the contractors, that even though the contractors were entitled to interest, the mere ownership of the warrants by the relator would not subrogate them to the rights under the contract, but it would put the relator in the position of having purchased these warrants, which are nonnegotiable instruments, and a thing that bears no relation to the contract in any way.    It is merely an order upon the state

to pay out of a particular fund such money as the law author-
izes to be paid out of the fund when the warrant is presented."

In answer to this position it is sufficient to say that the plain-
tiff as assignee of the warrants succeeded to and is clothed
with all the rights which Riddle & Roach, the assignors, would
possess were they yet the owners. That the warrants lack the
quality of negotiability essential to constitute commercial paper
neither adds to nor detracts from the rights of the plaintiff.
If Riddle & Roach would be entitled to collect interest on the
registered warrants, the plaintiff is likewise so entitled.

3.    Further objection to allowance of interest is urged upon
the ground that Riddle & Roach agreed to accept the warrants
at par and in full payment and satisfaction of the contract.
The purpose of this part of the contract is obvious and its effect
manifest. The warrants were to be accepted at their face val-
ues,—neither at a premium nor at a discount. Each warrant
at its par value was to be accepted as a payment on the contract
price; this was the purpose. The delivery of each warrant
operated as payment to an amount equal to its face value and
thereby satisfied *pro tanto* the conditions of the contract; this
was the effect. In illustration: A warrant for $1,000, whether
actually worth more or less, was, upon delivery to Riddle &
Roach, payment of $1,000 of the contract price, and to that
extent was in satisfaction of the contract.

4.    The final attack upon the petition consists in the sug-
gestion that the payment of interest on the warrants after reg-
istration was not within the contemplation of the parties when
the contract was made, and that therefore the repeal of Sec-
tions 1600 and 1601 of the Act of March 8, 1897, is applicable
to warrants thereafter drawn and annuls the provision of Sec-
tion 1601 which prescribed that warrants should bear interest
at the rate of 7 per cent. per annum from registration until
paid. The plaintiff, on the contrary, insists that the repeal of
the provision allowing interest on registered warrants can have
no effect upon its right to collect interest, for the reason that

the repeal of the provision mentioned was an attempt to impair the obligation of the contract entered into between the state and Riddle & Roach, and hence, that the Act, in so far as it purports to abrogate the provision touching interest, is void.

That which binds a party to the fulfillment of his agreement is the obligation of a contract. It consists of the duty which the law imposes upon the parties to perform their agreements. (See 15 Am. & Eng. Enc. Law (2d Ed.) 1040, and cases cited.) The duty which the law casts upon a party to comply with the terms of the contract which he has promised to perform, is therefore the obligation of his contract. Impairment of this obligation by state legislation is prohibited. (Section 10, Article I of the Federal Constitution; Section 11 of Article III of the Constitution of Montana.) When a state enters into a contract such as the one it made with Riddle & Roach it is not acting in its governmental or sovereign capacity but comes down to the level of persons; its contract has the same meaning as that of similar contracts between subjects, and therefore the law imposes upon it the obligation to perform its agreement according to the terms thereof. (*Murray* v. *City of Charleston*, 96 U. S. 443, 24 L. Ed. 760.) The legislative assembly can no more impair the obligation of such a contract than it can the obligation of a contract made between individual persons. While a change in the form of obtaining redress may be made, provided a substantial remedy is given or remains, the obligation of a contract depends nevertheless upon its terms, and the means which the law in existence at the time it was entered into afforded for its enforcement. A statute which changes the terms of an agreement by imposing new conditions, or dispensing with those expressed or implied is a law which impairs the obligation of a contract, for such a law "relieves the parties from the moral obligation of performing the original stipulations of the contract and prevents their legal enforcement." (*Railroad Co.* v. *Pennsylvania, sub nomine "Case of the State Tax on Foreign-Held Bonds,"* 15 Wall. 300, 21 L. Ed. 179.) The

degree of impairment is immaterial; a law lessening or increasing the obligation, or dispensing in even the slightest degree with its force, is repugnant to the fundamental law of the land. If at the time the contract was made the parties agreed in express terms, or by implication, that the warrants should bear interest after registration, a statute subsequently passed purporting to repeal the law under which interest was allowed and in reference to which the contract was made would, if enforced, dispense with a condition, and thereby impair the obligation, of the contract.

When the contract was made Section 1601, *supra,* was in force. This section provided that the warrants should be taken and accepted in full payment of the indebtedness to be incurred for the construction of the building, that no appropriation for the payment of the warrants should ever be made, or payment ever be made by or from any other source than the State School of Mines Building Fund; and, the legislative assembly contemplating that there might not be in the State School of Mines Building Fund sufficient money to meet the warrants drawn from time to time in payment of the contract price, it was further provided that if on the presentation of such warrants to the state treasurer there should not be enough money in the fund to pay them, they would be registered as of the date of presentation and were thenceforth, until paid, to bear interest at the rate of 7 per cent. per annum. It was also contemplated by the parties themselves that payment of the warrants might be delayed or postponed beyond the time when they were presented, and that in such event Riddle & Roach should have the right to cause their registration and be entitled thenceforth to interest as provided in Section 1601. One of the conditions of the contract was that the state would pay the face of the warrants upon presentation to the treasurer whenever sufficient money should be in the State School of Mines Building Fund for that purpose, and the state further promised that if at any time there should not be enough money in the fund to pay the

warrants they should be registered as of the date of presentation and thereafter bear interest. This agreement explicitly set forth in Section 1601 and referred to by the contract, was part and parcel of the consideration moving from the state through its duly authorized agents to Riddle & Roach. The right to collect interest on the registered warrants is, under the facts shown to exist in the case at bar, as clear as is the right to receive the principal sums. The promise to pay the interest out of the money in the building fund after registration was a condition the performance of which the law imposed upon the state as a duty; and the performance of this duty devolved upon the defendant state treasurer. The impairment of this obligation is as much beyond the power of the legislature to accomplish as is the impairment of the obligation to pay out of the proper fund the amounts for which the warrants were drawn. The statute which authorized the contract to be made and which was in force at the time it was made, conferred upon Riddle & Roach the right to receive interest on the warrants from the date of registration, and the contract was entered into in contemplation of and with reference to the statute. The state when it contracts as a person has no reserved right to withdraw or destroy by legislative action the effect of its promise which at the time it was made was founded upon a valuable consideration.

The demurrer is overruled. The defendant declines to plead further; upon the filing of the proper *praecipe* therefor, judgment will be entered awarding a peremptory writ of mandate as prayed.

*Writ granted.*