[S. F. No. 15062. In Bank.—December 13, 1933.]

RAY L. RILEY, as Controller, etc., et al., Petitioners, v. CHARLES G. JOHNSON, as Treasurer, etc., Respondent.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and H. H. Linney, Deputy Attorney-General, for Petitioners.

Webb Shadle, for Respondent.

THE COURT.—Petitioners have applied for a writ of mandate to compel the respondent State Treasurer to publish notice, as required by Statutes of 1933, chapter 605, that a certain registered warrant is now redeemable as to both principal and interest. One of the petitioners is the State Controller and the other is the owner and holder of the warrant in question. The petition alleges that on November 1, 1933, the Controller duly and regularly drew and signed the warrant in question, directing the Treasurer to pay out of the general fund in the state treasury the sum of $6.77 to F. W. Baude, petitioner herein; that the amount stated in the warrant was at that time due and owing and unpaid from the state to the payee therein named; that the warrant when drawn represented an amount in excess of the unapplied money in the general fund; that for that reason the Controller, pursuant to chapter 605 of the Statutes of 1933, upon the date the warrant was drawn, presented the same to the State Treasurer, who, thereupon, pursuant to the provisions of the same statute, indorsed upon the back thereof that the same was unpaid for lack of funds and bore interest at the rate of five per cent per annum from the date of the registration to the date upon which the Treasurer should first advertise that the warrant is payable upon presentation; that the Treasurer's name was printed on the back of said warrant as part of the indorsement; that the warrant here involved was the first warrant to be registered; that after the warrant was so registered it was returned to the Controller for distribution and, thereafter, the warrant was delivered to the payee Baude, who is now the owner and holder thereof; that on November 1, 1933, and subsequent thereto, and pursuant to law, the Controller duly and regularly drew and signed other warrants upon the state treasury directing the Treasurer to pay out of the general fund the amounts stated in the warrants to the payees therein named; that no money was available to pay

these warrants and the same were registered by the Treasurer and distributed to the payees by the Controller, as provided in chapter 605 of the Statutes of 1933; that on some of these warrants, as part of the indorsement and registration of the same, there was printed the Treasurer's name (as in the case of the Baude warrant), while, in the case of others, there was printed a facsimile of the Treasurer's signature; that all of the matter included in such indorsement and registration, including the printed or facsimile signature of the Treasurer, was placed thereon by the authority of the Treasurer; that on December 4, 1933, there was, and the Controller deemed there was, sufficient unapplied money in the general fund, after making due allowance for the paying of all demands upon such fund which are given priority by the Statutes of 1933, chapter 605, to pay the Baude warrant, being warrant No. 1 in order of registration; that on December 4, 1933, the Controller notified the respondent Treasurer of the number of the warrant to be redeemed and requested the Treasurer to publish notice immediately that said warrant is now redeemable, as required by chapter 605 of the Statutes of 1933, but the Treasurer refused and still refuses to publish said notice, on the ground that there is no valid law requiring him to publish the notice or to pay the interest on or the principal of such warrant, and that chapter 605 of the Statutes of 1933, which purports to require him to do so, is unconstitutional and void; that the question involved is of great public importance; that warrants totaling several millions of dollars have already been drawn and issued to payees; that the financial condition of the state treasury now is and for some time will continue to be such that additional warrants totaling several millions of dollars will be drawn, registered and issued to the respective payees, awaiting receipt of money in the treasury to pay the same; that great uncertainty exists as to the legal sufficiency of such warrants. A copy of the warrant, together with all indorsements thereon, is attached to the petition as an exhibit. The relief prayed for is that respondent be compelled to publish notice, as required by law, and to redeem the warrant and to pay the holder thereof the interest and principal thereon.

The answer and return of the respondent alleges that the petition does not state facts sufficient to constitute a cause

of action; that there is no authority in law for the registration and indorsement of interest-bearing warrants, and that chapter 605 of the Statutes of 1933, purporting to authorize the registration of such interest-bearing warrants, is unconstitutional and void, for reasons that will be hereinafter discussed.

The controversy thus presented is the result of the passage by the last legislature of a bill providing for the registration and indorsement of interest-bearing warrants (Stats. 1933, chap. 605). This bill was passed by the legislature in contemplation of the fact that the general fund would be exhausted before the end of the present biennium, and that it would, therefore, become necessary to register warrants. This contingency has now occurred. The section involved purports to confer on the Treasurer and Controller the power to register warrants and to pay five per cent per annum interest thereon, and to provide in detail a method of issuing, registering and ultimately redeeming said warrants. It is the constitutionality of this section that is challenged in this proceeding.

The first contention of respondent is that the legislature has no power to provide for the registration of warrants, and that, even if such power exists, the legislature is powerless to pay interest on such registered warrants. These contentions are without merit. There is no prohibition against the registering of warrants or the payment of interest thereon found in the Constitution of this state. It is well-settled law that in the absence of constitutional limitation the legislature has the power to provide for the registration and indorsement of warrants unpaid for the lack of funds. (*Rhea* v. *Newman*, 153 Ky. 604 [156 S. W. 154, 44 L. R. A. (N. S.) 989]; *State* v. *State Board of Examiners*, 74 Mont. 1 [238 Pac. 316]; 59 Cor. Jur. 270, sec. 408.) It is equally well settled, in the absence of express constitutional restriction, that the legislature may provide for the payment of interest on unpaid warrants. (*Hays* v. *McDaniel*, 130 Ark. 52 [196 S. W. 934]; *State* v. *Barret*, 25 Mont. 112 [63 Pac. 1030]; 59 Cor. Jur. 269, sec. 405.) There can be no doubt, therefore, that the legislature was well within its general powers in passing the bill in question, unless the provisions thereof are invalid for other reasons.

The act provides that whenever the Controller draws his warrant upon the Treasurer, payable out of the general fund, and the warrant represents an amount in excess of the unapplied money in the fund, the Controller shall present such warrant to the Treasurer, "who shall indorse upon the back thereof the date of presentation by the Controller and that the same is not paid for want of funds and bears interest at the rate of five per cent per annum from the date of such registration to and including the date upon which the State Treasurer first advertises that said warrant is payable upon presentation. Indorsement by the Treasurer in the manner hereinabove described shall constitute the registration of such warrant." Respondent does not complain that the indorsement printed on the back of the Baude warrant or any subsequent warrant is not complete in all details, but he does contend that the indorsement and registration is not valid because not personally signed by the Treasurer. The Treasurer did add to the indorsement either his printed signature or a facsimile of his signature. We find no requirement that the Treasurer shall personally sign the indorsement. All that is required is that the Treasurer strictly follow the terms of the statute. The statute requires that certain information be contained in the indorsement and registration, but does not expressly or impliedly require the Treasurer to sign his name thereto. As long as the indorsement indicates that it is the Treasurer who is making the same, that is all that is required, and the printed or facsimile signature indicates this with sufficient certainty. It is an admitted fact that the indorsement here involved was placed upon the back of the Baude warrant with the authority of the Treasurer. Moreover, the act itself provides a check on all warrants registered and indorsed thereunder. After providing what the indorsement shall contain, the act provides: "The State Controller shall furnish the State Treasurer with a separate warrant register for warrants which are registered under this section, and the State Treasurer shall stamp on said warrant register the date on which any warrant is registered and the date on which said warrant is first advertised as payable." The procedure herein outlined has been fully complied with.

The next contention of respondent is that the provisions of chapter 605 of Statutes of 1933 do not constitute a

valid appropriation of moneys from the general fund, as such moneys are received (subject to the priorities mentioned in the statute). There can be no doubt that the provisions of the act requiring such warrants with interest to be paid from the unapplied moneys in the general fund, subject to the priorities therein provided, as such moneys are received into such fund, constitute a legal appropriation of so much money as will be necessary to make such payment. (*State* v. *McCauley*, 15 Cal. 430; *People ex rel. McCauley* v. *Brooks*, 16 Cal. 11.) No particular form is required for an appropriation. In determining whether an appropriation has been made, the intention of the legislature is to be ascertained from the entire statute. (*Proll* v. *Dunn*, 80 Cal. 220 [22 Pac. 143]; *Irelan* v. *Colgan*, 96 Cal. 415 [31 Pac. 294].) ▮ Respondent also contends that since by the provisions of chapter 605 of Statutes of 1933 but $150,000 per year have been appropriated for interest payments, the same to lapse each year if not used, and since it is conceded that this amount will be insufficient, the excess interest over the amount of the specific appropriation cannot be paid from the general fund as moneys therein accrue. This point is also without merit. A reading of the entire act clearly indicates that it was the intent of the legislature that interest and principal of registered warrants should be a charge on the unapplied moneys in the general fund, as they accrue, and that when each warrant is redeemed, it shall be redeemed in its entirety, that is, both the principal and interest shall be redeemed in one payment. Section 3 of the act provides that such interest as may be due to the warrant holders is to be paid by the Treasurer "when registered warrants are paid by him". The act contemplates but one payment by the Treasurer with relation to any one warrant—one payment of an amount which represents principal and interest due. That amount has been appropriated by chapter 605 of the Statutes of 1933 to pay these warrants. While the legislature may have believed that the $150,000 appropriated for interest was sufficient, yet it clearly did not intend that the warrant should remain unpaid if the specific interest appropriation was deficient. The act creates a special fund of $150,000 yearly for interest and appropriates the remaining unapplied moneys, as they accrue, for principal and any further interest, as needed. In effect, the act constitutes an appropriation from the un-

applied moneys, as they are received, of such amount as will be required to pay the registered warrants in full, both as to principal and interest, though, in effecting such interest payment, the funds from the specific interest appropriation are to be first exhausted.

Respondent suggests that if this be the proper interpretation of the act, it then is void for uncertainty, for the reason that the exact amount thus appropriated cannot now be ascertained. All that is necessary is that the legislature fix in the appropriation bill the extent to which the treasury will be drawn upon. This it has done in the instant case. The amount appropriated from the unapplied moneys in the general fund by the act in question is limited by the extent of the principal of the warrants, which, in turn, is limited by the various appropriations made by the legislature. The amount of interest on the warrants is limited by the amount of principal of the warrants and can be ascertained by applying a simple mathematical formula to the amount of the principal. This renders the appropriation sufficiently certain. (*Irelan* v. *Colgan, supra.*)

The respondent next contends that the registration and indorsement of interest-bearing warrants at a time when there are no unapplied moneys in the general fund to meet either the principal or interest thereof constitutes the creation of an indebtedness or liability in excess of $300,000, in violation of article XVI, section 1, of the Constitution. It is an admitted fact that both the principal and interest on the unpaid registered warrants now exceed, or in the future will exceed, $300,000. It is our opinion that no indebtedness or liability is created, within the meaning of the constitutional provision in question, when, as here, the legislature, at the time of authorizing the obligation, appropriates money to meet such obligation. We have already held that the provisions of chapter 605 of the Statutes of 1933 constitute an appropriation of the unapplied moneys in the general fund of a sufficient amount of money to pay the interest and principal of the registered warrants. It is well settled in this state that revenues may be appropriated in anticipation of their receipt just as effectually as when such revenues are physically in the treasury. The appropriation of such moneys and the issuance of warrants in anticipation of the receipt of revenues in effect operates in

the nature of a cash payment and, therefore, does not create an indebtedness or liability within the meaning of the debt limitation clause. (*State* v. *McCauley, supra; People* v. *Pacheco,* 27 Cal. 175; *Bickerdike* v. *State,* 144 Cal. 681 [78 Pac. 270].)

Respondent also suggests that subsequent legislatures may repeal the statute or appropriate for other purposes the unapplied money in the general fund, and thus exhaust the general fund, and thus create an indebtedness or liability in violation of the clause in question. This point is likewise without merit. Inasmuch as we have already held that the statute contains an appropriation from the unapplied moneys in the general fund of such amount as will be necessary to pay such registered warrants, with interest thereon, the legislature could not hereafter repeal or render ineffectual such appropriation as against warrant holders by repealing the appropriation act or by appropriating to other uses any part of such moneys as would otherwise accumulate in such fund and be applicable to the payment of such registered warrants. (*People ex rel. McCauley* v. *Brooks, supra.*)

The argument that since the warrants have no definite maturity date they are invalid is without merit. Although the lack of a definite maturity date may render the warrants non-negotiable, it in no way affects their validity.

The last argument urged by respondent is that the act confers on the Controller uncontrolled discretion as to when such warrants shall be redeemed and permits him to determine which warrants shall be redeemed, and thus to accord priority over prior registered warrants to subsequently registered warrants. These contentions find no support in the act. Chapter 605 of the Statutes of 1933 intends, subject to the priorities therein contained, that the warrants shall be redeemed in the order of their issuance, when sufficient unapplied moneys accrue in the general fund to pay the interest and principal thereon. The duty imposed on the Controller to notify the Treasurer when he "deems that there are sufficient unapplied moneys in the general fund in the state treasury to pay all or some of the registered warrants outstanding against said general fund", does not vest in the Controller uncontrolled discretion as to when such warrants shall be redeemed. The duty to notify

the Treasurer when such a state of facts exists is ministerial and the Controller could not properly refrain from notifying the Treasurer because he deemed it best to have such unapplied moneys devoted to other uses. By chapter 605 of the Statutes of 1933, the legislature has determined that such registered warrants, subject to the preferences and priorities therein stated, shall have first call upon such unapplied moneys. The Controller could be compelled in an appropriate proceeding to conform to the spirit and intent of the act.

For the foregoing reasons, it follows that the alternative writ of mandate heretofore issued should be made peremptory.

It is so ordered.