[Sac. No. 7900. In Bank. July 9, 1971.]

HOUSTON I. FLOURNOY, as State Controller, Petitioner, v.
IVY BAKER PRIEST, as State Treasurer, Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Talmadge R. Jones and Walter J. Wiesner, Deputy Attorneys General, for Petitioner.

George Herrington, Richard C. Salladin and Orrick, Herrington, Rowley & Sutcliffe for Respondent.

**OPINION**

**THE COURT**—In this proceeding petitioner Houston I. Flournoy, the Controller of the State of California, seeks a writ of mandate to compel respondent Ivy Baker Priest, the Treasurer of the State of California, to register a demand and adopt a resolution providing for the issuance of State of California notes as authorized by sections 17300-17302 of the Government Code. These sections are part of chapter 223 of the Statutes of 1971 (see appendix), which was enacted as an urgency measure and signed by the Governor on June 28, 1971 "to provide an additional means of temporary borrowing to meet cash flow needs, and avoid more costly registered warrants. . . ." (Ch. 223, § 6.) Respondent refuses to register petitioner's demand and to adopt a resolution providing for the issuance of notes on the

ground that chapter 223 violates the California Constitution. She contends that the issuance of notes pursuant thereto without an election would create a state indebtedness in excess of $300,000 in violation of article XVI, section 1, of the Constitution; that such issuance would result in payments from the state treasury without "warrants duly drawn thereon by the Controller" in violation of article XIII, section 21, of the Constitution; and that chapter 223 is invalid as an urgency measure on the ground that it purports to change the duties of the Controller and Treasurer in violation of article IV, section 8, of the Constitution. We find no merit in any of these contentions. Accordingly, the writt will issue.

Chapter 223 was enacted to meet the practical problem created by the fact that the collection of state revenues within the fiscal year 1971-1972 will lag behind the expenditures required by appropriations for that year, thereby necessitating the borrowing of funds to be repaid when the anticipated revenues are collected. In the past the problem of dealing with temporary insufficiencies of the funds in the state treasury to meet current operating expenses of the state government has been solved by the use of registered warrants. The validity of the registered warrant procedure was established in *Riley* v. *Johnson* (1933) 219 Cal. 513 [27 P.2d 760, 92 A.L.R. 1292], and *Riley* v. *Johnson* (1936) 6 Cal.2d 529 [58 P.2d 631], which upheld the constitutionality of chapter 605 of the Statutes of 1933.

In brief chapter 605 provided that if there were insufficient funds in the treasury to pay warrants drawn by the Controller, the Treasurer should register such warrants and provide that they should bear interest at the rate of five percent per annum. The warrants were then delivered to the payees thereof and were thereafter payable when sufficient funds became available in the treasury. The court held that the Legislature could validly provide for this method of discharging the state's obligations. It pointed out that the payment of interest was based on the appropriation for such interest contained in chapter 605, and that the payment of the principal of the warrants was based both on the appropriations of that chapter and the appropriations for the underlying expenditures involved. It rejected the contention that the warrants created an indebtedness in excess of $300,-000 in violation of article XVI, section 1, of the Constitution. "It is our opinion that no indebtedness or liability is created within the meaning of the constitutional provision in question, when, as here, the Legislature, at the time of authorizing the obligation, appropriates money to meet such obligation. We have already held that the provisions of chapter 605 of the Statutes of 1933 constitute an appropriation of the unapplied moneys in the general fund of a sufficient amount of money to pay the interest and principal of the registered warrants. It is well settled in this state that

revenues may be appropriated in anticipation of their receipt just as effectually as when such revenues are physically in the treasury. The appropriation of such moneys and the issuance of warrants in anticipation of the receipt of revenues in effect operates in the nature of a cash payment and, therefore, does not create an indebtedness or liability within the meaning of the debt limitation clause. [Citations.]" (*Riley* v. *Johnson, supra,* 219 Cal. 513, 520-521; *Riley* v. *Johnson, supra,* 6 Cal.2d 529, 531-532.)

We perceive no constitutionally relevant distinctions between chapter 605 upheld in the *Riley* cases and chapter 223. The Legislature has merely provided for a more orderly procedure for dealing with the treasury's cash flow problems. Instead of providing for the issuance of numerous unpaid warrants on a haphazard basis, chapter 223 provides for an orderly procedure whereby the Controller estimates in advance the funds that will be needed to meet the current expenses of government. He then draws a demand or demands in that amount "against appropriations made from the General Fund to be paid in the then current fiscal year prior to the receipt of [estimated probable income] . . ." and delivers the demands to the Treasurer. "The State Treasurer shall register the same for nonpayment and notify the State Controller. The State Controller may then authorize the State Treasurer to issue and sell notes of the State of California representing said registered demand or demands. Such notes shall be issued only to provide cash in an amount sufficient to satisfy said" demands. (Gov. Code, § 17300.) "Upon receipt of the purchase price of the notes, the State Treasurer shall notify the State Controller that funds for the payment of such registered demand or demands are in the State Treasury. . . . The State Controller may thereupon proceed to draw warrants against appropriations lawfully made by the Legislature to be paid in said fiscal year and represented by said registered demand or demands. . . ." (Gov. Code, § 17303.) Government Code, section 17304, then provides for the payment of the notes with interest from moneys in the General Fund in the fiscal year of issuance,[1] and section 17310 expressly appropriates the funds necessary to pay the principal and interest of the notes and necessary administrative expenses. Thus, in this case as in the case of the statute considered in the *Riley* cases, the Legislature has appropriated revenues in anticipation of their receipt and provided for the

---

[1]Section 17304 also permits recourse to "internal borrowing from other funds in the event insufficient moneys are available from the General Fund." Respondent contends that this provision will permit payment of the notes from other funds in violation of constitutional priorities governing payments from such funds. (See, e.g., Cal. Const., art. XIII, § 15, art. XVI, § 1.5.) Properly interpreted, however, the quoted provision does not authorize any "internal borrowing" that would violate any constitutional earmarking applicable to the expenditure of funds.

issuance of notes in anticipation of such receipt. Such appropriation and issuance "operates in the nature of a cash payment and, therefore, does not create an indebtedness or liability within the meaning of the debt limitation clause." (*Riley* v. *Johnson, supra,* 219 Cal. 513, 520-521; *Riley* v. *Johnson, supra,* 6 Cal.2d 529, 531-532.)

■ Respondent contends, however, that chapter 223 violates article XIII, section 21, of the Constitution on the ground that it authorizes money to be drawn from the treasury without a warrant "duly drawn thereon by the Controller."[2] The obvious purpose of this requirement is to insure the Controller's concurrence in the expenditure of state funds. Although the demands that the Controller may draw against appropriations made from the General Fund do not constitute warrants duly drawn for the payment of funds from the treasury, such demands are followed by the issuance of notes payable from the treasury that must be authorized and approved by the Controller. Since such authorization and approval fully satisfy the purpose of article XIII, section 21, we believe that notes drawn pursuant to such authorization and approval constitute warrants duly drawn by the Controller within the meaning of the constitutional provision.

■ Respondent finally contends that chapter 223 is not a valid urgency measure on the ground that it changes the duties of the offices of the Controller and Treasurer in violation of article IV, section 8, of the Constitution.[3] There is no merit in this contention. Chapter 223 changes only the procedures whereby the Controller and the Treasurer discharge their duties in the fiscal management of the state government. ■ "An addition or subtraction in relation to the volume of the duties required to be performed by an officer, which does not substantially affect the primary duties of his office, is not such a change of duties as would prevent immediate effectiveness of legislation properly declared to be urgent." (*Martin* v. *Riley* (1942) 20 Cal.2d 28, 37 [123 P.2d 488]; *Davis* v. *County of Los Angeles* (1938) 12 Cal.2d 412, 424 [84 P.2d 1034]; *Behneman* v. *Alameda-Contra Costa Transit Dist.* (1960) 182 Cal.App.2d 687, 693 [6 Cal.Rptr. 382]; cf. *Stockburger* v. *Jordan* (1938) 10 Cal.2d 636, 647 [76 P.2d 671].) In this case, as in the *Martin* case, the changes "enacted are for the most part merely additions to similar duties already imposed by law upon the particular officers" (20 Cal.2d at p. 37), and they are therefore not changes

---

[2]Article XIII, section 21, provides as here pertinent: "No money shall be drawn from the Treasury but in consequence of appropriation made by law, and upon warrants duly drawn thereon by the Controller."

[3]Article IV, section 8, provides as here pertinent: "An urgency statute may not create or abolish any office or change the salary, term or duty of any office. . . ."

in the duties of the offices of the Controller and the Treasurer within the meaning of article IV, section 8.

Let a peremptory writ of mandate issue as prayed. This judgment is final forthwith.

## APPENDIX

Section 2 of chapter 223 of the Statutes of 1971 provides:

"Part 5 (commencing with Section 17300) is added to Division 4 of Title 2 of the Government Code, to read:

"17300. Whenever the State Controller determines that moneys in the General Fund, after allowing for internal borrowing from other funds, are, or are expected to be, insufficient for the payment of all appropriations made by the Legislature which are to be paid in the then current fiscal year out of the moneys in the General Fund, the State Controller may, based upon his estimate of the probable income to the General Fund during the then current fiscal year and the probable dates of receipt thereof, draw a demand or demands against appropriations made from the General Fund to be paid in the then current fiscal year prior to the receipt of such income and deliver the same to the State Treasurer. The State Treasurer shall register the same for nonpayment and notify the State Controller. The State Controller may then authorize the State Treasurer to issue and sell notes of the State of California representing said registered demand or demands. Such notes shall be issued only to provide cash in an amount sufficient to satisfy said registered State Controller's demand or demands.

"17301. Notes authorized to be issued may be sold by the State Treasurer from time to time as directed by the State Controller. The notes may be sold at public sale upon such notice as the State Treasurer shall deem advisable, or, if no bids are then received or if such bids are not satisfactory to the State Treasurer, then at private sale, from time to time as provided by the State Treasurer. The State Treasurer shall authorize the issuance of such notes on a fixed maturity basis. Upon the maturity date of the notes, the State Treasurer shall pay the notes from moneys then in the General Fund.

"17301.5. Notwithstanding the provisions of Section 17301, no notes may be issued under this chapter after December 31, 1971.

"17302. Any note issued pursuant to this part shall be issued pursuant to a resolution authorizing the issuance thereof adopted by the State Treasurer with the approval of the State Controller and (a) may be negotiable, (b) may be payable to order or to bearer, (c) may be in any denomination, (d) shall be payable not later than the last day of the fiscal year in which such note has been issued and shall not be renewable beyond that date, and (e) may bear interest up to a maximum rate to be determined by the State Treasurer.

"17302.5. Notwithstanding the provisions of Section 17302, all notes issued under this chapter shall be redeemed and paid by March 31, 1972.

"17303. Upon receipt of the purchase price of the notes, the State Treasurer shall notify the State Controller that funds for the payment of such registered demand or demands are in the State Treasury and available for the payment of claims represented by said registered demand or demands. The State Controller may thereupon proceed to draw warrants against appropriations lawfully made by the Legislature to be paid in said fiscal year and represented by said registered demand or demands. Upon the payment in full of the notes representing said registered demand or demands, said registered demand or demands shall be canceled.

"17304. Any revenues in the General Fund during the current fiscal year are available for the payment of all notes and the interest thereon until the same shall

be fully paid and discharged. The notes, together with the interest thereon, shall be payable exclusively from moneys in the General Fund in the fiscal year of issuance, but not excepting recourse to internal borrowing from other funds in the event insufficient moneys are available from the General Fund.

"17305. The aggregate amount of notes, as determined from their principal amount, issued pursuant to this part and outstanding at any one time, shall not exceed 15 percent of the General Fund revenues as set forth in the annual report by the State Controller to the Governor required by Government Code Section 12460. The annual report referred to in this section shall be the most recent report submitted by the State Controller to the Governor as of the commencement of the fiscal year in which such notes may be issued. Notes may be issued in excess of such 15-percent limitation pursuant to a statute adopted by two-thirds of the membership of each house of the Legislature.

"17306. All notes issued pursuant to this part by the state are legal investments for all:

"(a) Trust funds.

"(b) Funds of insurers.

"(c) Funds of saving and loan associations.

"(d) Funds of banks.

"(e) Funds of state agencies, cities, counties, cities and counties or other public agencies or corporations.

"17307. Notes issued under this part are acceptable and may be used as security for the faithful performance of any public or private trust or obligation or for the performance of any act, including the use of such notes by banks as security for deposits of funds of the state and its agencies or of any city, county, city and county, or other public agency or corporation.

"17308. Any state or local agency that is authorized to invest funds in its treasury in securities which are legal investments for savings banks may invest the funds in notes of the state issued under this part.

"17309. Whenever the Treasurer deems that it will increase the salability of the notes to obtain, prior to or after sale, a legal opinion as to the validity of the notes from attorneys other than the Attorney General, the Treasurer may obtain such a legal opinion.

"17310. There is hereby appropriated out of any unapplied money (as defined in Section 17220) in the General Fund in the State Treasury such sum as will be necessary to pay the interest on and the principal of any notes issued and sold during the current fiscal year pursuant to the provisions of this part, as they become due and payable.

"In addition, the sum of thirty thousand dollars ($30,000) is hereby appropriated without regard to fiscal year, from the General Fund, to be set aside in a special account entitled State Notes Expense Account, to be used to pay expenses incurred by the State Treasurer in providing for the preparation, sale, issuance, advertising, legal services or any other act which, in the discretion of the State Treasurer, is necessary to carry out the purposes of this part. Such account shall operate as a revolving fund and whenever notes are sold, out of the first money realized from their sale, there shall be redeposited in the account such sums as have been expended for the above purposes, which may be used for the same purposes and repaid in the same manner whenever additional sales are made."