## ADVISORY OPINION TO THE GOVERNOR OF RHODE ISLAND.

Supreme Court of Rhode Island.

Aug. 2, 1982.

August 2, 1982

To His Excellency J. Joseph Garrahy

Governor of the State of Rhode Island and Providence Plantations

We received from Your Excellency a request, pursuant to section 2 of article XII of amendments to the Rhode Island Constitution, for our opinion on the construction of P.L.1982, ch. 344. That statute authorizes the state to borrow during the fiscal year ending June 30, 1983, "such sum or sums, at such time or times and upon such terms and conditions not inconsistent with the provisions and limitations of section 2 of Article XXXI of the articles of amendment to the constitution of Rhode Island as the general treasurer, with the advice of the governor, shall deem for the best interests of said state * * *." That statute also provides, however, "that the amounts so borrowed shall not exceed in the aggregate one hundred and forty million dollars * * *."

The specific question asked by Your Excellency is as follows:

"MAY THE STATE OF RHODE ISLAND, CONSISTENT WITH ARTICLE XXXI, SECTION 2 OF THE AMENDMENTS OF THE RHODE ISLAND CONSTITUTION AND WITH ARTICLE III OF P.L.1982, CH. 344, INCUR DEBTS IN ANTICIPATION OF RECEIPTS FROM TAXES DURING THE 1983 FISCAL YEAR, THE ARITHMETIC SUM OF WHICH BORROWINGS WILL EXCEED ONE HUNDRED FORTY MILLION DOLLARS (THE LIMIT PRESCRIBED BY P.L.1982, CHAPTER 344), PROVIDED THAT ALL SUCH BORROWINGS WILL BE REPAID BEFORE THE END OF THE 1983 FISCAL YEAR, AND PROVIDED FURTHER THAT AT NO TIME DURING THE 1983 FISCAL YEAR WILL THE TOTAL OF SUCH OUTSTANDING BORROWINGS EXCEED ONE HUNDRED FORTY MILLION DOLLARS?"

Because of the urgency of your need for clarification of the statutory borrowing power, we promptly considered the certified question and the memorandum submitted relating thereto and indicated, in a summary opinion issued June 30, 1982, that the question should be answered in the affirmative. Our reasons for reaching that conclusion are set forth herein.

Article XXXI, section 1 of amendments to the Rhode Island Constitution provides that the General Assembly may not, without the express consent of the people, incur state debts exceeding $50,000. Section 2 of

that article provides, however, that notwithstanding the provisions of sec. 1, the General Assembly may by law provide for the state to borrow, in anticipation of receipts from taxes during any fiscal year, sums of money not exceeding twenty percent of the receipts from taxes in the last prior fiscal year. Section 2 also provides that any money so borrowed must be repaid within the fiscal year that the borrowings were made.

By enacting P.L.1982, ch. 344, the General Assembly authorized borrowing on terms and conditions consistent with these constitutional provisions, subject further to the $140,000,000 limitation quoted above. We assume that $140,000,000 is less than twenty percent of the receipts from taxes in the next prior fiscal year and thus within the requirements of art. XXXI, sec. 2 of the constitution. The sole issue presented, therefore, is whether P.L.1982, ch. 344, in stating that the amounts borrowed thereunder "shall not exceed in the aggregate one hundred and forty million dollars," refers to the total of the amounts of the original borrowings irrespective of any repayment made on those borrowings or only to the total of the outstanding amounts borrowed.

■ If there is no doubt or ambiguity in a statute, there is no room for construction. *City of Providence v. Killoran,* 447 A.2d 369 (R.I., 1982). Indeed, a statute's "intent is to be found in the words of a statute, if they are free from ambiguity and express a reasonable meaning." *Little v. Conflict of Interest Commission,* R.I. 397 A.2d 884, 887 (1979); *see Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 392 A.2d 371 (1978); *Brier Manufacturing Co. v. Norberg,* 119 R.I. 317, 377 A.2d 345 (1977). In the instant case, however, the statute is not entirely clear. Accordingly, this court must attempt to ascertain the legislative intention by viewing the statute in its entirety and the language used therein in light of the nature and purpose of the enactment. *Narragansett Electric Co. v. Harsch,* 117 R.I. 395, 368 A.2d 1194 (1977).

■ In exercising its constitutional power to authorize borrowing in anticipation of receipts from taxes, the General Assembly provided to the General Treasurer and the Governor the means to distribute the state's income from taxes throughout the fiscal year. The General Assembly expressly stated that the borrowing power conferred under the statute should be exercised "for the best interests" of the state. In construing the $140,000,000 limitation, we must, therefore, consider the impact of that provision upon the interests of the state.

Limiting the total amount of money which the General Treasurer can borrow in the fiscal year serves several legitimate legislative purposes. First, by restricting the extent to which the state can rely on borrowed money, the limit protects the state's financial security. Second, the limit enhances the credit of the state in the market for funds by assuring lenders that the state will not incur debts above a stated amount. Third, the limit reduces the amount the state would pay in interest on borrowed funds by strengthening the state's credit and restricting the amount the state can borrow.

To interpret the $140,000,000 limitation as applying to the original amounts of the individual loans made throughout the fiscal year regardless of any repayments made on those loans clearly would frustrate the statutory aim of allowing the state the flexibility of spreading its income over the fiscal year. If, for example, the state borrowed $75,000,000 at the beginning of the fiscal year and repayed that debt shortly thereafter, this construction of the limitation would preclude the state from borrowing and repaying a second $75,000,000 later in the year.

Moreover, to construe the limitation as applying to the sum of the amounts borrowed furthers none of the legislative purposes for a debt limitation discussed above. Thus construed, the limitation would allow the state to borrow $140,000,000 on the first day of the fiscal year and repay none of the borrowed money until the last day of that year. To allow the state to do so, while forbidding the state from borrowing and repaying lesser sums throughout the year

would not reduce the state's dependence on borrowed money. Accordingly, such a construction of the limitation would not protect the state's financial security, enhance the credit of the state, or reduce the costs to the state in interest on borrowed funds.

In *State v. Sprague,* 113 R.I. 351, 355, 322 A.2d 36, 38 (1974), we stated that

> "where one construction of an act of the Legislature operates to defeat an otherwise legitimate legislative intendment while another serves to support it, we will adopt the latter construction."

We believe that this principle of statutory construction controls in the instant case. The state is afforded the greatest flexibility in spreading its income over the entire fiscal year in a manner which serves its best interests if the state can borrow any amount under $140,000,000, repay its debt, and borrow again up to that limit.

Accordingly, we conclude that the debt limitation provision of P.L.1982, ch. 344, requires only that the total of the outstanding borrowings at no time during the fiscal year exceeds $140,000,000.

Respectfully yours,

Joseph A. Bevilacqua
Chief Justice

Thomas F. Kelleher
Associate Justice

Joseph R. Weisberger
Associate Justice

Florence K. Murray
Associate Justice

Donald F. Shea
Associate Justice