510 So.2d 662 (1987)
The STATE BOND COMMISSION of the State of Louisiana
v.
ALL TAXPAYERS, PROPERTY OWNERS, AND CITIZENS OF the STATE of Louisiana and Non-Residents Owning Property or Subject to Taxation Therein, and All Other Persons Interested in or Affected in Any Way by the Issuance of Revenue Anticipation Notes of the State of Louisiana.
No. 87-CD-1741.
Supreme Court of Louisiana.
August 11, 1987.
Rehearing Denied August 17, 1987.
William J. Guste, Jr., Atty. Gen., Charles L. Patin, Jr., Martha S. Hess, La. Dept. of Justice, Charles William Roberts, Executive Counsel to Governor of La., for State Bond Com'n.
A. Edward Hardin, Celia R. Cangelosi, John W. Scott, Craven, Scott & Randow, Carl Crane, James Donelon, Garey J. Forster, Terry W. Gee, Kernan A. Hand and Charles Lancaster, for defendants, intervenors, applicants.
COLE, Justice.
This validation suit presents the constitutional issue of whether or not revenue anticipation notes authorized by Act 28 of 1986 (La.R.S. 39:1410.41 et seq.) are prohibited by Article VII, § 6 of the Louisiana Constitution of 1974. The purpose of the Act, amended by Act 61 of 1987 to extend its expiration date from June 30, 1987 to June 30, 1988, is
...to authorize the State Bond Commission to issue and sell revenue anticipation notes to avoid temporary cash flow deficits and to provide a working balance in the state general fund to enable the state to pay expenses in a timely manner from currently budgeted and appropriated revenues of the state general fund.
Article VII, § 6(A) of the Constitution provides in pertinent part:
Unless otherwise authorized by this constitution, the state shall have no power, directly or indirectly, or through any state board, agency, commission, or otherwise, to incur debt or issue bonds except by law enacted by two-thirds of the elected members of each house of the legislature.
Act 28 of 1986 was enacted by only a majority of the legislature, not by the two-thirds of its membership as required by the constitution. The precise question, therefore, is the constitutionality of Act 28, of *663 1986. The parties to this lawsuit agree the pivotal determination to be made by this court in resolving the question is whether or not the revenue anticipation notes constitute "debt" within the context and meaning of Article VII, § 6(A) of the constitution.
For the following reasons we conclude Act 28 of 1986, as amended by Act 61 of 1987, is constitutional and the plaintiff is entitled to judgment as prayed for in its motion.

PROCEDURAL BACKGROUND
This matter is before the court pursuant to a joint writ application granted on July 22, 1987 under the supervisory jurisdiction of this court as found at Art. V, § 5(A), La. Const. of 1974. By virtue of an order to the district court issued concurrently with the granting of a writ of review, the entire record was sent to this court. [The constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. State v. Wimberly, 414 So.2d 666 (La.1982); Loeb v. Collier, 131 La. 377, 59 So. 816 (1912); State ex rel. Union Sawmill Co. v. Summit Lumber Co., 117 La. 643, 42 So. 195 (1906).]
A "motion for judgment" was filed in the Nineteenth Judicial District Court by the State Bond Commission (hereafter referred to as the "bond commission") on July 13, 1987, pursuant to Louisiana's uniform bond validation statutes (LSA-R.S. 13:5121 et seq.). The motion for judgment sought an order directing its publication (LSA-R.S. 13:5124) in the official state journal and prayed for judgment declaring legal and valid: (1) Act 28 of 1986 (LSA-R.S. 39:1410.41 et seq.), as amended by Act 61 of 1987; (2) an issuance not to exceed Two Hundred Eighty Million ($280,000,000) Dollars aggregate principal amount of revenue anticipation notes, designated State of Louisiana Revenue Anticipation Notes, Series 1987, in one or more series (hereafter referred to as the "Notes"); and the security thereof; (3) the related proceedings and the covenants and provisions set forth in a resolution of the bond commission adopted on July 9, 1987, authorizing the issuance of the Notes; and, (4) the second sentence of Section 12, of the 1987 General Appropriations Act (Act 18 of 1987), providing for a warrant against the general fund for the purpose of repayment of the Notes and a priority in favor thereof.
On the same day as the filing of the motion for judgment, an answer and reconventional demand was filed by John W. Scott, Carl N. Crane, James J. Donelon, Garey James Forster, Terry W. Gee, Kernan A. Hand, and Charles D. Lancaster, Jr. (hereafter referred to as "defendants"), all members of the legislature who filed in their capacities as taxpayers and citizens of the state. The reconventional demand alleges primarily that Act 28 is unconstitutional. Certain other positions are alleged through the reconventional demand, not all which have been argued in brief or orally before this court.[1]
*664 The bond commission and the defendants filed a joint stipulation admitting the following facts: on July 10, 1987, the resolution authorizing the issuance of the Notes was published in the state's official journal; the size of the issuance does not exceed 20% of the anticipated revenues of the state general fund to be received during the remainder of the current fiscal year; the state treasury is currently faced with cash flow shortfalls which will prevent the timely honoring of warrants upon the treasury; and, there are not anticipated to be sufficient funds available within the state general fund to timely honor warrants due and payable in the months of August and September 1987.

APPLICABLE LAW
A long recognized and well established principle of judicial interpretation of a state constitution is that, unlike the federal constitution, the provisions of a state charter are not grants of power but instead are limitations on the otherwise plenary power of the people exercised through its legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation the state constitution does not prohibit. Thus, to hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute assailed. Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La.1977); In re Gulf Oxygen Welder's Supply Profit Sharing Plan and Trust Agreement, 297 So.2d 663 (La.1974); Kane v. Louisiana Commission on Governmental Ethics, 250 La. 885, 199 So.2d 900 (1967); State v. Guidry, 247 La. 631, 173 So.2d 192 (1965); State v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); State ex rel, Labauve v. Michel, 121 La. 374, 46 So. 430 (1908).
The constitutional validity of Act 28 of 1986, as amended, is the central and decisive issue raised before us. The legality and validity of the Notes, the covenants and provisions of the resolution authorizing their issuance, the pertinent provisions of Section 12 of Act 18 of 1987, and the related proceedings affecting the Notes are all conditioned upon the validity of Act 28. If that Act is constitutionally valid, the Notes, the resolution, the priority and method for repayment and the related proceedings must be upheld. (LSA-R.S. 13:5129). Also, if the Act is valid, the judgment of this court shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the Notes or any other matter adjudicated or which might have been called in question in such proceeding. (LSA-R.S. 13:5129).

OPINION
The bond commission argues neither La. Const. of 1974, Article VII, § 6, nor any other provision of the constitution, prohibits the issuance and sale of the Notes. Its position is that the Notes are not "debt" in a constitutional sense and thus the provisions of Article VII, § 6(A) and (B) are inapplicable. It contends further Article VII, § 6(C) does authorize the Notes. The defendants disagree, contending Article VII, § 6 is exclusive in that no species of indebtedness may be permissibly incurred other than as provided by that provision. They contend further the Notes are not revenue bonds as envisioned by Section 6(C) and the provision affords no support for plaintiff.
We agree with the defendants that Article VII, § 6(C) does not authorize the Notes. However, we do not construe the provision as prohibiting the issuance of such Notes. For emphasis, we state again: In its exercise of the entire legislative power of the state, the legislature may enact any legislation the state constitution does not prohibit. The fact that the legislature may have sought to fit Act 28 within the confines of § 6(C) does not make the Notes "revenue bonds." Nor does it mitigate against the legislature's plenary power to otherwise enact the provisions of Act 28.
We do not agree with the defendants that the Notes create debt and are therefore restricted by Article VII, § 6. It could be argued such a conclusion would render *665 each item in the general appropriations act a debt. Actual dollars are not available at the time the expenditures are authorized. The authority to present warrants upon the treasury for payments authorized through the items of an appropriation bill are based upon the reasonable anticipation of revenue receipts during the upcoming fiscal year.[2]
Revenue anticipation notes authorized by Act 28 are payable within the fiscal year in which they are issued from revenues received during that fiscal year. (LSA-R.S. 39:1410.45(A)). They are issued because of temporary cash shortfalls within the state treasury resulting in a temporary inability of the state to pay expenses from currently budgeted and appropriated revenues (LSA-R.S. 39:1410.41). The joint stipulation of facts filed herein provides there is a cash flow shortfall and sufficient funds may not be available to meet budgeted requirements during the months of August and September, 1987. Repayment of the notes is provided for at LSA-R.S. 39:1410.43 and the creation of a segregated account for that purpose is authorized in LSA-R.S. 39:1410.45. Section 7 of the resolution of the bond commission authorizing the issuance of the Notes, and Section 12 of Act 18 of 1987 (the General Appropriations Act) further authorize the creation of the segregated account and provide a priority for repayment of the Notes over the processing of any warrants for expenditures authorized under the General Appropriations Act. The Notes do not carry with them a pledge of the full faith and credit of the State for their repayment. (LSA-R.S. 39:1410.50); Section 6 of the resolution of the bond commission authorizing the issuance of the Notes.
In concluding the Notes do not constitute the incurring of "debt" within the meaning of Article VII, § 6 of the constitution, we are persuaded that, as used, the word is a term of art or technical term to be interpreted according to its received meaning and acceptation with those learned in the field of governmental finance. (La.Civ. Code art. 15). See, State ex rel. La Follette v. Stitt, 114 Wis.2d 358, 338 N.W.2d 684 (1983); Boneno v. State of North Carolina, et al., 54 N.C.App. 690, 284 S.E.2d 170 (1981); Schmoldt v. Bolen, 183 Okl. 191, 80 P.2d 609 (1938); Kelley v. Baldwin, 319 Pa. 53, 179 A. 736 (1935). See also, Advisory Opinion to the Governor of Rhode Island, 450 A.2d 807 (R.I.1982); State ex rel. Wyoming Farm Loan Board v. Herschler, 622 P.2d 1378 (Wyo.1981); Flournoy v. Priest, 5 Cal.3d 350, 95 Cal. Rptr. 793, 486 P.2d 689 (1971); State ex rel. Black v. Eagleson, 32 Idaho 276, 181 P. 934 (1919); Rankin v. Board of Examiners, 59 Mont. 557, 197 P. 988 (1921); In re State Warrants, 6 S.D. 518, 62 N.W. 101 (1895). The matter before us is res nova in Louisiana and the cited jurisprudence is a helpful aide for interpretative purposes. These authorities negate the idea that the Notes constitute a debt as regards constitutional limitations. We find no opposing authorities defining the nature of revenue anticipation notes. Much of the above cited authorities hold such notes do not constitute "debt" and predate our constitution of 1974. It does not represent a recent concept and may be presumed attendant to the consideration of our constitutional convention delegates who drafted Article VII, § 6.
At the time of our recent constitutional convention the delegates also had before them for comparison Article IV, § 2 of the Constitution of 1921. The first part of that provision then contained language substantially the same as that used in Article VII, § 6(A) and (B) of the present constitution. Charged with the jurisprudential interpretations of what constituted "debt" in a constitutional sense, the delegates chose to retain the language. Had it been their desire to depart from the well recognized interpretation of "debt," they could have used more specific terms. Instead, they continued the same word usage. It would have been a simple matter to prohibit revenue *666 anticipation notes without a two-thirds vote of the legislature had that been their desire. A review of the constitutional convention records reflects no such intent.
It is clear the device utilized by the bond commission to enhance the cash flow of the state fisc is one which does not provide any additional money for state purposes. An indebtedness may be created in one sense but not a "debt" historically understood to burden future legislatures and taxpayers and one which is secured by the full faith and credit of the state. In this instance it might be said the state is borrowing from its own funds, with restrictions and safeguards to insure repayment in the current fiscal year. Thus, a "debt" as envisioned by Article VII, § 6 of our constitution is not created.

DECREE
For the foregoing reasons, it is the judgment of this court that Act 28 of 1986, as amended by Act 61 of 1987, is constitutional and valid.
It is further the judgment of this court that not exceeding Two Hundred Eighty Million ($280,000,000) Dollars aggregate principal amount of revenue anticipation notes of the State of Louisiana to be designated State of Louisiana, Revenue Anticipation Notes, Series 1987, to be issued in one or more series, are hereby validated and declared to be legal and valid obligations of the issuer, State Bond Commission of the State of Louisiana.
It is further the judgment of this court that the second sentence of Section 12 of Act 18 of 1987 is hereby validated and declared to be legal and valid.
It is further the judgment of this court that all pledges of revenue and of all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of the said Notes, more particularly described above, are hereby validated and declared to be legal and valid; and,
It is further the judgment of this court that any application for a rehearing in this case be applied for not later than three (3) days from the rendition hereof. (LSA-R.S. 13:5127.)
NOTES
[1] Defendants' allegations include, inter alia: "Act 28 of 1986 and Act 61 of 1987 are violative of the La. Const. of 1974 for the following reasons, to-wit: a) Act 28 of 1986 and Act 61 of 1987 provide for the incurring of state debt for purposes not allowed by the Louisiana Constitution in Article VII, Sec. 6(C); b) The exceptions to the provision of Article VII, Section 6(A) and (B) pertain only to revenue bonds, and the notes at issue here are not revenue bonds within the contemplation of the Constitution; c) Article VII, Section 6 distinguishes between bonds and other evidences of debt such as Revenue Anticipation Notes; d) The legislative procedures for authorization of the incurring of debt have not been complied with in the passage of either Act 28 or Act 61 in that neither act received the requisite number of votes on final passage in either house of the Legislature; e) The Acts seek to define terms in the Constitution in a manner inconsistent with the normal and accepted meaning of those terms for the purpose of authorizing the incurring of debt without constitutional authority and in violation of the constitutional limitation; f) These Acts are outside the constitutionally permitted authority of the Legislature to incur debt; g) If these obligations are within the legislative authority to authorize the incurring of debt, their issuance will cause a violation of the debt limitations provided by law for the State of Louisiana; h) Utilization of Revenue Anticipation Notes will create an unbalanced general operated budget for the State of Louisiana contrary to the requirements of the Louisiana Constitution of 1974."
[2] State ex rel. Noble v. Clinton, 28 La. Ann. 400 (1876), held an appropriation from the general fund which does not exceed the amount of revenues to be collected therein during the year for which the appropriation was made, does not constitute debt within the contemplation of the then constitutional debt limitation provision.