OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | |
|---|---|
| OPINION | : |
| | : No. 89-1204 |
| of | : |
| | : |
| JOHN K. VAN DE KAMP | : June 6, 1990 |
| Attorney General | : |
| | : |
| RODNEY O. LILYQUIST | : |
| Deputy Attorney General | : |
| | : |

THE HONORABLE JESSE R. HUFF, DIRECTOR OF FINANCE, has requested an opinion on the following question:

Which year is a school district's "base year" for purposes of receiving state reimbursement of voluntary desegregation costs?

CONCLUSION

A school district's "base year" for purposes of receiving state reimbursement of voluntary desegregation costs is the 1984-1985 fiscal year if the district incurred desegregation costs audited and approved by the Controller for that year. If the district initiated its desegregation program after the 1984-1985 fiscal year, its "base year" is its first fiscal year of implementing its desegregation plan.

ANALYSIS

Education Code section 42249[1] authorizes local school districts to submit claims to the state for the reimbursement of the costs of desegregating their schools. Subdivision (a) of section 42249 states:

"Any school district which maintains a voluntary program designed to remedy the harmful effects of racial segregation may, if the program meets the criteria of this section, present a claim for reimbursement for the costs of the program . . . ."

Section 42247 places a limit upon the amount that the state will reimburse a district each year for its desegregation costs. The limit is stated as a percentage of the costs incurred by the district during

---

[1]All unidentified section references hereafter are to provisions of the Education Code.

a prior year commonly known as the "base year." The amount of the base year costs restricts all future annual claims to be paid by the state. Section 42247 provides:

"(a) Notwithstanding any other provision of law, reimbursements authorized by Section . . . 42249 for desegregation costs incurred in the 1985-86 fiscal year, and each fiscal year thereafter, shall not exceed the following amounts:

" . . . . . . . . . . . . . . . . . . . . . .

(2) For desegregation programs initiated after the 1984-85 fiscal year, the amount in excess of one-fifth of the audited costs approved by the Controller for the first full year of operation, adjusted pursuant to Section 42247.2, and provided that the school district has contributed in the prior fiscal year not less than one-fifth of the audited costs approved by the Controller for that fiscal year. For purposes of this paragraph, desegregation programs initiated after the 1984-85 fiscal year shall not include expansion of desegregation activities by school districts that were reimbursed pursuant to Section 42249 for desegregation costs incurred during the 1984-85 fiscal year, except as otherwise provided by Section 42247.2.

"(3) For all other desegregation programs, the amount in excess of one-fifth of the audited desegregation costs approved by the Controller and incurred in the 1984-85 fiscal year, adjusted pursuant to Section 42247.2, and provided that the school district has contributed in the prior fiscal year not less than one-fifth of the audited costs approved by the Controller for that fiscal year.

"(b) Claims for reimbursement of desegregation program costs shall be subject to audit by the Controller to determine all or the following:

"(1) Whether the costs and programs are for purposes of desegregation or alleviation of the harmful effects of racial segregation, as provided in the plan filed by the district pursuant to Section 42247.1.

"(2) Whether the costs are increased costs which exceed the district's expenditure levels for regular educational programs.

"(3) Whether the costs are excessive or unreasonable." (Emphases added.)[2]

The question presented for analysis concerns the determination of a school district's base year for purposes of section 42247. Which prior year of the district is the one upon which all future reimbursement claims must be calculated? We conclude that the base year is the 1984-1985 fiscal year unless the district initiated its desegregation program thereafter, in which case the base year becomes the first fiscal year of implementing its desegregation plan.

Preliminarily, we note that "[c]laims for reimbursement of desegregation program costs shall be subject to audit by the Controller to determine . . . [w]hether the costs are excessive or unreasonable." (§ 42247, subd. (b)(3).) This statutory mandate is consistent with other legislative directives for the Controller to audit all claims prior to the payment of state funds. (See Gov. Code, §§ 925.6, 12410.) We have previously concluded that the Controller's authority to audit claims filed

---

[2]The adjustments authorized by section 42247.2 allow increases for inflation and for increased enrollment (average daily attendance).

against the state's treasury is constitutionally based. (71 Ops.Cal.Atty.Gen. 275 (1988).) "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant." (Cal. Const., art. XVI, § 7; see *Flournoy* v. *Priest* (1971) 5 Cal.3d 350, 354 ["The obvious purpose of this requirement is to insure the Controller's concurrence in the expenditure of state funds"].)

If it is found that the district incurred desegregation costs for the 1984-1985 fiscal year and its claim for that year has been audited and approved by the Controller, that ends the inquiry. The state reimbursement program does not cover the "expansion of desegregation activities by school districts that were reimbursed pursuant to section 42249 for desegregation costs incurred during the 1984-85 fiscal year, except as otherwise provided by Section 42247.2." (§ 42247, subd. (a)(2).) Reading subdivision (a)(2) in light of subdivision (a)(3), we do not believe that a district may "terminate" its 1984-1985 desegregation activities and "initiate" a new program thereafter. A district that has "audited desegregation costs approved by the Controller and incurred in the 1984-85 fiscal year" (§ 42247, subd. (a)(3)) has already initiated its program by the 1984-1985 fiscal year, and "initiation" is a one-time event. The base year for the district would thus be the 1984-1985 fiscal year under subdivision (a)(3) of section 42247.

If the Controller finds that a school district did not incur desegregation costs during the 1984-1985 fiscal year, he must determine which year is the district's "first full year of operation." (§ 42247, subd. (a)(2).) This phrase could have several meanings. One interpretation would be the first twelve month period for which a school district incurs desegregation costs in initiating a program. Another would be the first school year in which a desegregation plan is being implemented, including any changes in attendance patterns. Does the term "operation" include the planning and organizational stages of a desegregation program?

In addressing this issue, we note that the Controller is to audit claims for reimbursement to determine "[w]hether the costs and programs are for purposes of desegregation or alleviation of the harmful effects of racial segregation, as provided in the plan filed by the district pursuant to Section 42247.1." (§ 42247, subd. (b)(1).) Section 42247.1 requires a district to "submit to the Superintendent of Public Instruction and the Controller a copy of the district's desegregation plan . . . ." The Superintendent of Public Instruction has adopted regulations (Cal. Code of Regs., tit. 5, §§ 90-101) concerning a district's formulation of a desegregation plan, including stages for identifying the district's segregated schools, obtaining community involvement in and support of desegregation activities, holding public hearings on ways to implement the desegregation of schools, providing in-service training for staff, and making curriculum reforms for the enhancement of quality integrated education. Many of these desegregation activities may occur prior to any changes in attendance patterns.

In construing the language of section 42247, we are "to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386.) "In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501.)

The term "operation" commonly means "doing or performing of a practical work or of something involving practical application of principles or processes . . . the quality or state of being functional or operative . . . capacity for action or functioning." (Webster's New International Dict. (3d ed. 1966) p. 1581.)

We believe that by use of the phrase "first full year of operation" in section 42247, the Legislature intended for a school district's base year to begin when it begins to implement its

desegregation plan. Prior to that time, the program may have been "initiated" and may have incurred costs but is not "operational" or "functioning" as a practical matter. While the planning and organizational stages are necessary prerequisites to the carrying out of a program's goals and purposes, they do not signify that the plan is being "executed" through attendance pattern changes. In this regard, the phrase "first full year of operation" may be distinguished from such other phrases used in the statute as "desegregation costs" and "desegregation activities." The latter two phrases would encompass the time, effort, and funds expended by a district in initiating a desegregation program.

Normally the legislative history of a statute is helpful in construing ambiguous language so as to effectuate the Legislature's intent. (See *Long Beach Police Officers' Assn.* v. *City of Long Beach* (1988) 466 Cal.3d 736, 743; *People* v. *Jeffers* (1987) 43 Cal.3d 984, 993.) Here, the legislative history respecting the enactment of section 42247 (Stats. 1985, ch. 180, § 1) does not shed light on the meaning of the phrase "first full year of operation." However, when section 42247 was amended in 1987 (Stats. 1987, ch. 259, § 2), the Legislature amended another statute to treat a similar problem faced by school districts operating desegregation programs under federal court orders. As explained in the report of the Senate Rules Committee:

"ANALYSIS: Existing law (AB 38, Ch. 180, 1985):

" . . . . . . . . . . . . . . . . . . . . . . .

"2. Provides that 1985-86 be used for the base year for future funding of desegregation claims under court orders that became final prior to January 1, 1986. (Problem: On December 31, 1985, San Jose Unified School District was given a court order to desegregate. The district spent the second semester of 1985-86 preparing for the relocation of students which began in the 1986-87 school year, making 1986-87 its first year of full implementation.)

" . . . . . . . . . . . . . . . . . . . . . . .

"This bill:

" . . . . . . . . . . . . . . . . . . . . . . .

"2. Permits districts being reimbursed for desegregation costs under a federal court order final before January 1, 1986, but not implemented until 1985-86, to be reimbursed for their 1985-86 costs (half-year) and to use their first full year of costs (1986-87) as the base year for future funding. (Under current law, the base year is 1985-86.)"

Other statements in the committee reports are consistent with this declaration of legislative purpose that the first full year of operation (the base year) begins with the actual implementation of a desegregation plan, not with the plan preparation and organizational stages. This legislative history also demonstrates that the base year is the first fiscal year of implementation.

We reject the argument that the first full year of operation begins when all the students have been reassigned under a district's voluntary desegregation program. This construction of subdivision (a)(2) of section 42247 misplaces the word "full." Also, this proposed construction would be contrary to the Legislature's intent as evidenced by its prohibition against reimbursing a district's costs for the "expansion of desegregation activities." (§ 42247, subd. (a)(2).)

Finally, the administrative procedure is for a district to submit an estimated cost claim at the beginning of a fiscal year. (See § 42249.2, subd. (c).) The Controller pays the claim and then performs an audit and "approves" the claim after the fiscal year has closed. It is possible that a claim will be readjusted once it has been audited; the Controller in fact may disapprove it entirely. For purposes of section 42247, it is not the amount initially paid by the Controller that is critical in setting the base year limit; rather, it is "the audited costs approved by the Controller" (subd. (a)(2)) or "the audited desegregation costs approved by the Controller" (subd. (a)(3)) upon which all future computations must be based.[3]

In answer to the question presented, therefore, we conclude that a school district's base year for purposes of receiving state reimbursement of voluntary desegregation costs is the 1984-1985 fiscal year if the district incurred desegregation costs audited and approved by the Controller for that year. If the district initiated its desegregation program after the 1984-1985 fiscal year, its base year is its first fiscal year of implementing its desegregation plan.

\* \* \* \* \*

---

[3]The request for our opinion included an example of a school district that had been paid $181,000 for its 1984-1985 fiscal year claim. The Controller subsequently audited the claim and rejected it because no costs had been incurred for that year. Under these circumstances the district's base year would not be the 1984-1985 fiscal year.