Filed 8/31/15  P. v. Rosas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>AARON ROSAS,<br><br>　　　　Defendant and Appellant. | C076577<br><br>(Super. Ct. No. CRF132776) |

A jury convicted defendant Aaron Rosas of two counts of making a criminal threat, assault with a firearm, infliction of corporal injury on a cohabitant, misdemeanor battery, two counts of misdemeanor child abuse or endangerment, and misdemeanor resisting or obstructing a peace officer in the performance of his duties.  The jury also found true allegations defendant had personally used a firearm in the commission of the assault and one of the criminal threat counts.  The charges stemmed from arguments defendant had with Beatriz Castro, his live-in girlfriend and mother of his six-month-old daughter.

The trial court sentenced defendant to prison on the felony convictions. He received three years for count 2, assault with a firearm (Pen. Code, § 245, subd. (a)(2)),[1] and a consecutive one-year term for count 3, infliction of corporal injury (§ 273.5, subd. (a)). He also received a four-year term for the personal firearm use enhancement to count 2, for a total prison term of eight years. The trial court stayed the sentences on counts 1 and 4, making a criminal threat, and on the personal firearm use enhancement to count 1. (§ 422).

Defendant contends the evidence was insufficient to support his conviction for assault with a firearm, and to support one of the criminal threat convictions. He also argues the trial court erred in failing to give an instruction on attempted criminal threat as a lesser included offense of the completed act of making a criminal threat.

We shall reverse the conviction for assault with a firearm because we conclude there was insufficient evidence on the facts presented for the jury to reasonably find that the firearm defendant used to threaten the victim was loaded. We shall otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Around 4:00 in the afternoon, West Sacramento Police Officers Alfonso Ceja and Daniel Gill were dispatched to a bar in West Sacramento for a possible domestic violence incident. When they arrived, they spoke with Castro, who was frightened, hysterical, and crying. She had redness and scratches to her throat and a torn shirt. She told them that she and defendant had an argument that morning when she was on the phone to her mother. She said that after she hung up the phone they argued, and defendant grabbed a .22 rifle and began hitting Castro with his free hand while holding the rifle. While he was doing this, Castro was holding their six-month-old baby. Castro told the officers that

---

[1] Further statutory references to sections of an undesignated code are to the Penal Code.

2

when defendant stopped hitting her, he pointed the rifle at her and said, "I'm going to shoot you. I'm going to shoot you in both your legs and put you in a wheelchair." After that, the argument "dialed down," defendant put away the rifle, and he took a nap.

Castro told the officers that later in the day she and defendant had a second argument. During that argument they started driving to an ice cream store. Defendant, who was driving, reached back into the back seat where Castro was sitting with the baby, and grabbed Castro by the hair and pulled her to the ground. She tried to pull him off of her, and ended up scratching him in the face. In the scuffle, the baby's car seat fell over onto the seat next to Castro. Defendant released Castro, turned the car around, and went back to the trailer where they were living. As Castro exited the car, defendant grabbed a bottle, pointed it at her, and said, "I'm going to kill you." He told her he had people watching her parents, and if she called the police, he would have them killed.

Castro walked to a neighboring bar, from which she called police. Castro told the officers where they could find the gun in the couple's trailer. Officer Gill located the .22-caliber rifle where Castro indicated it would be. The gun was not loaded, and Officer Gill found no ammunition.

At trial, Castro at first testified defendant had not made any type of threat to her during the argument that morning, and had not hit her. She testified he had a rifle that his boss gave him to look after the property where they were living and where defendant was working as a diesel mechanic. She testified defendant pulled out the gun that morning after their argument because a man showed up that defendant did not get along with. She denied defendant ever threatened her with the rifle. She testified she did not know where defendant kept the rifle. She testified that after their fight in the morning they went to get ice cream. She testified he did not do anything physical to her, but she scratched him on the face because he was verbally attacking her. It was after she scratched him, that he grabbed her hair and pulled her down, causing the baby seat to fall with the baby buckled

3

inside it.  She later admitted that she scratched defendant in an attempt to defend herself when he pulled her hair.  She said he never pointed a bottle at her and threatened her.

Castro at first claimed she never called the police or talked to the 911 operator, but she admitted calling 911 after hearing a recording of her call played in the courtroom. On the recording, she told the operator that defendant was threatening her with a rifle. After hearing the 911 recording, she also admitted defendant had threatened her with a rifle in the morning, but that he had been drunk and under the influence of drugs.  She testified defendant pointed the rifle at her and told her if she did not leave he would kill her or shoot both her legs and leave her paralyzed.  She testified she was scared when he threatened her with the rifle.  She had not testified to it earlier because she did not want to go on with the case or be questioned any more.

Castro stated on cross-examination that she had not actually believed defendant would shoot her because the rifle had no bullets.  She had been scared because defendant was angry and she thought he might hit her, not because she thought he would actually carry out his threats.

## DISCUSSION

### I

### Insufficient Evidence of Assault with a Firearm

Count 2, assault with a firearm (§ 245, subd. (a)(2)) required the prosecution to prove:  (1) that the defendant did an act with a firearm that by its nature would directly and probably result in the application of force; (2) that he did the act willfully; (3) that when he acted he was aware of facts that would lead a reasonable person to realize that the act, by its nature would directly and probably result in the application of force to someone; (4) that when the defendant acted he had the present ability to apply force with a firearm to a person; and (5) that defendant did not act in self-defense.  (CALCRIM No. 875.)

4

California case law has long held that an assault is not committed by pointing an unloaded gun in a threatening manner at another person. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3 (*Rodriguez*).) The reasoning is that absent evidence the gun was loaded, the proof is insufficient that the defendant had the present ability to inflict a violent injury. (*Ibid.*) Defendant argues the evidence was insufficient to convict him of assault with a firearm because there was not sufficient evidence the gun was loaded. Under the evidence presented in this case, we come to the conclusion that there was not substantial evidence to support a finding that the gun was loaded, and will reverse the assault conviction.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence-that is, evidence that is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*Rodriguez, supra,* 20 Cal.4th at p. 11.)

The jury must find every element of the offense proven beyond a reasonable doubt. (*People v. Cole* (2004) 33 Cal.4th 1158, 1208.) The element in question here was the defendant's present ability to inflict a violent injury with the gun. (See *Rodriguez, supra*, 20 Cal.4th at p. 11.) A threat to shoot with an unloaded gun is not an assault since the defendant lacks the present ability to inflict violent injury. (*People v. Fain* (1983) 34

5

Cal.3d 350, 357, fn. 6.) Since there is no direct evidence in this case whether the rifle was loaded at the time defendant threatened Castro, we look to the circumstantial evidence. Therefore, the question before us is whether the circumstantial evidence was such that a reasonable trier of fact could find the gun was loaded beyond a reasonable doubt.

The only evidence that the gun was loaded was the inference derived from defendant's actions in pointing the gun at Castro and his words indicating he would shoot her. *Rodriguez* held that the defendant's actions and words in putting a gun to the victim's chin and warning him to keep his mouth shut could reasonably be interpreted as an admission of the present ability to inflict harm. (*Rodriguez, supra*, 20 Cal.4th at p. 12.)

However, the circumstances in *Rodriguez* are different from those here. There, the defendant was a gang member who shot and murdered someone in a drive-by shooting that was witnessed by Merritt, the victim of the later assault. (*Rodriguez, supra*, 20 Cal.4th at pp. 5-6.) The next day, the defendant confronted Merritt, put the gun barrel to Merritt's chin and told him to keep quiet because " 'I could do to you what I did to them.' " (*Id*. at p. 7.) The circumstances were more likely to justify an inference that the gun was loaded because the defendant was a gang member who carried his gun around on his person, who had shot and killed someone the day before, and who accosted someone with whom he was unacquainted for the specific purpose of dissuading that person from going to police.

Here, defendant was involved in a domestic dispute, possibly while drinking and taking drugs. He was angry, grabbed the gun he happened to have in the house, and threatened to shoot. Defendant might have been threatening Castro with a loaded weapon, or he might have simply been engaging in blustering in the course of an argument. The likelihood that the gun was loaded or unloaded was equal. In *Rodriguez*, on the other hand, it is unlikely a gang member would walk the streets making threats

6

while armed with an unloaded weapon. It was especially unlikely since Rodriguez had shot and killed someone the day before, undoubtedly with a loaded weapon.

Most significantly, in this case police found the gun not long after defendant used it to threaten the victim, it was unloaded, and no ammunition was found with it. There was no evidence in *Rodriguez* that the gun the defendant used to assault the victim was ever found. The record here is unclear on whether the gun was located by police in the same place Castro saw defendant put it away in the morning, but the police found the gun where Castro told them it would be. It is possible defendant emptied the gun between the time he threatened Castro with it in the morning and the time the officers found the gun in the afternoon. However, Castro, who was with defendant until she went to the bar, never testified she saw him empty the gun, there was no apparent motivation for defendant to have emptied the gun because he did not know Castro was calling the police, and no ammunition was found in the trailer. Also, in this case Castro testified that defendant had no bullets.

The People's reliance on *People v. Lochtefeld* (2000) 77 Cal.App.4th 533 is misplaced. There, the defendant was charged with subdivision (c) of section 245, assault with a deadly weapon other than a firearm. The defendant had used a pellet gun, and his claim on appeal was that there was insufficient evidence to support a finding that the pellet gun was sufficiently charged with $CO_2$ to inflict injury. (*Lochtefeld,* at p. 538.) The court held that the defendant's own words and actions in threatening and aiming at others supported the jury's determination the pellet gun was operable. (*Id*. at p. 541.) However, the defendant's actions and words in that case were supplemented by the fact that when the officers on the scene recovered the pellet gun, they test-fired it five or six times to see if it was functional, and each time a burst of compressed $CO_2$ was expelled. (*Id*. at p. 536.) Here, by contrast, when the officers found the gun it was unloaded and no ammunition was found with it.

We are also concerned that the jury may not have understood that it was required to find the rifle was loaded in order to convict defendant of assault with a firearm.[2] The standard instruction that was given did not explicitly tell the jury that the gun must be loaded, only that the defendant must have had the present ability to apply force with the gun. Moreover, the very next instruction given after the instruction on assault with a firearm was the personal firearm use enhancement instruction, which told the jury the gun did *not* have to be loaded.

What we have is a weak inference that the gun was loaded from defendant's words and actions, an inference the gun was not loaded from the victim's testimony that the defendant had no bullets, and a strong inference the gun was not loaded from the fact that it was unloaded when found and no ammunition was found with it. Coupled with the fact that the jury was not instructed the gun had to be loaded to convict defendant of assault with a firearm, we must conclude that the evidence was not sufficient to reasonably justify a finding that the gun was loaded beyond a reasonable doubt. We will reverse the assault conviction.

II

Sufficient Evidence of Immediacy and Actual Fear

The jury convicted defendant on count 1 of threatening to commit a crime which would result in death or great bodily injury to another. (§ 422.) To obtain a conviction, the prosecution must prove five elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat— which may be 'made verbally, in writing, or by means of an electronic communication

---

[2] There was no evidence that defendant threatened to use the gun as a bludgeon.

8

device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Defendant argues the evidence was insufficient to sustain his conviction on this charge because there was no evidence to prove the third and fourth elements of the offense.

With respect to the third element, defendant argues he did not convey to Castro the prospect that he would immediately execute the threat, because the rifle was not loaded and Castro knew as much. However, section 422 does not require a showing of an immediate ability to carry out the threat. (*In re David L.* (1991) 234 Cal.App.3d 1655, 1660.) "Section 422 requires only that the words used be of an immediately threatening nature and convey 'an immediate *prospect* of execution' (italics added) even though the threatener may have no intent actually to engage in the threatened conduct." *(Ibid.)* " '[U]nequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 340.)

Defendant threatened Castro that if she did not leave he was going to kill her, or that he was going to shoot both her legs and leave her paralyzed. These were words of an immediately threatening nature, and were sufficient to convey an immediate prospect of execution. This was sufficient to satisfy the requirements of the statute.

Defendant also claims there was no evidence Castro was placed in fear when he made the threat. Section 422 requires the threat cause the victim to be in sustained fear.

9

Sustained fear simply means " 'a period of time that extends beyond what is momentary, fleeting, or transitory.' [Citation.]" (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.)

Defendant's argument is belied by Castro's testimony that after he threatened to shoot her she felt "[s]cared" and she "didn't know what to do." Even though she told defense counsel on cross-examination that she was not scared that he would do what he threatened to do because there were no bullets in the rifle, the jury was entitled to believe her testimony that she was placed in fear, and reject her testimony on cross-examination. This is especially true in light of Castro's other testimony that she felt remorse when defendant was arrested, and her obvious reluctance to provide testimony against defendant at trial. Additionally, Officer Ceja testified that when Castro talked to him and described her confrontations with defendant, she was still afraid.

This was sufficient evidence to show defendant's threats caused Castro to undergo sustained (i.e., more than momentary, fleeting, or transitory) fear.

III

Trial Court Not Required to Instruct on Attempted Criminal Threat

Defendant argues the trial court had a sua sponte duty to instruct on the necessarily included offense of attempted criminal threats. He argues the evidence raised a question as to whether he completed the offense of making a criminal threat because there was evidence he did not have the immediate prospect of executing the threat since the gun was unloaded, and because Castro testified on cross- examination that she did not suffer any fear.

The trial court must sua sponte instruct on a lesser included offense if the evidence raises a question as to whether all of the elements of the offense were present, and there is evidence that would justify a conviction of the lesser offense. (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) " 'An offense is necessarily included in another if . . . the greater statutory offense cannot be committed without committing the lesser because all of the

10

elements of the lesser offense are included in the elements of the greater.' [Citation.]" (*Id.* at p. 365-366.)  The Supreme Court has recognized that it is theoretically possible to commit an attempted criminal threat.  (*People v. Toledo*, *supra*, 26 Cal.4th 221.) Examples would be a written threat that is intercepted before delivery, or an oral threat that is not understood by the victim, or an oral threat that is understood but that does not actually cause sustained fear.  (*Id*. at p. 231.)

As discussed, the defendant need not have the immediate ability to carry out the threat to be guilty of the crime of criminal threat.  Thus, defendant's contention that the jury should have been instructed on the lesser included offense of attempt because there was sufficient evidence he had no present ability to carry through on the threat fails.  The offense was complete when the threat was made, even if defendant had no present ability to carry out the threat.

Furthermore, there was insufficient evidence that Castro did not suffer sustained fear to warrant an instruction on making an attempted criminal threat.  " '[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury. [Citations.]  "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that *the lesser offense, but not the greater*, was committed.  [Citations.]' (*People v. Breverman* (1998) 19 Cal.4th 142, 162, second italics added (*Breverman*).)" (*People v. Hughes, supra,* 27 Cal.4th 287, 366-367.)

Here, the evidence that Castro did not suffer sustained fear was weak.  It consisted solely of Castro's statement on cross-examination that she was not scared that defendant would shoot her because there were no bullets in the rifle.  However, Castro testified she felt remorse after defendant was arrested, and her attempts to make up a false story about why defendant got his gun out the morning they argued, coupled with her false claim that

11

she never telephoned the police, indicated her reluctance to testify against him. Additionally, in front of the jury Castro told the judge, "I don't want to go on with this," and "I'm fed up with it."

On the other hand, Castro also testified that she was afraid when defendant pointed the gun at her and threatened her. Officer Ceja testified that he observed Castro to be "still afraid" from her confrontations with defendant and "a little hysterical." Furthermore, any rational juror would believe that Castro would have felt more than momentary fear when defendant pointed a gun at her and told her he would shoot her if she did not leave, after beating her while she held her baby in her arms.

In the present case, the evidence in support of any attempted criminal threat conviction was not substantial enough to warrant consideration by the jury, thus there was no sua sponte duty to instruct.

## DISPOSITION

The conviction as to count 2, assault with a firearm pursuant to Penal Code section 245, subdivision (a)(2), is reversed and the matter is remanded for resentencing. In all other respects the judgment is affirmed.


                                            __BLEASE__ , J.


We concur:


    __RAYE__ , P. J.


    __MURRAY__ , J.


12